## MASTROCOLA et al. v. ACHESON, Secretary of State et al.

United States District Court
S. D. New York.
June 17, 1952.

Mortimer E. Greif, New York City (Herbert Solon, New York City, of counsel), for plaintiff.

Myles J. Lane, U. S. Atty., New York City, Southern District of New York (Robert Rubinger, Asst. U. S. Atty., New York City, of counsel), for defendant.

S. H. KAUFMAN, District Judge.

This is an action pursuant to 8 U.S.C.A. § 903 for a declaratory judgment that the plaintiffs are citizens of the United States.

Two of three original plaintiffs, Antonietta Anna Mastrocola Di Nunzio and Lucia Mastrocola, remain. Both have entered the United States with a certificate of identity in order to litigate the question of their citizenship. One plaintiff, their brother Ugo Mastrocola, who, because he was a schoolteacher, was required by Italian law to, and did, swear allegiance to Italy, voluntarily discontinued his action.

The government alleges that the plaintiffs were expatriated originally as dual nationals failing to elect American citizenship, and subsequently by failure to avail themselves of 8 U.S.C.A. § 801(a).

The essential facts upon which both claims are based are uncontradicted. The plaintiffs' father was naturalized before the District Court of St. Louis County, Duluth, Minnesota, on February 15, 1902. Both sisters were born in Hibbing, Minnesota, Antonietta on December 16, 1907 and Lucia on December 5, 1911. Both plaintiffs were brought to Italy by their father during the month of July, 1912. They were both well educated in Italy. In addition to going to school the plaintiffs helped their father run his hotel in Boiano.

In March 1938 the American Consul in Rome denied Antonietta's application for an American passport. The Consul believed she was a dual national, expatriated by her failure to return to the United States after attaining majority. There is some evidence that Lucia accompanied her sister to the consulate. At the time of the application Antonietta was thirty and Lucia twenty-six. Plaintiffs again sought American passports in May 1947. They were again denied on the ground plaintiffs were expatriates.

The only question of law presented is: Did the plaintiffs expatriate themselves because (1) they did not return to the United States within a reasonable time after attaining their majority, or (2) they did not return within the period of grace granted by 8 U.S.C.A. § 801(a).

Interpreting the law and facts most favorably toward the plaintiffs, each had two opportunities to assert citizenship.

■ When their father abandoned his American citizenship in 1921, plaintiffs became dual nationals. They were American citizens by birth, and acquired Italian citizenship by operation of the law of that country. Article 12, Italian Nationality Law of June 13, 1912. Failure of a dual national to return to the United States after attaining majority is an abandonment of American citizenship. Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, reaffirmed by Mandoli v. Acheson, D.C.Cir., 1952, 193 F.2d 920 (for native-born dual nationals), Segreti v. Acheson, D.C.Cir., 1952, 195 F.2d 205 (for foreign-born child of American citizen).

■ Even if it be assumed, contrary to the fact, that plaintiffs did not voluntarily expatriate themselves by failing to return to the United States after attaining majority, they receive no benefit from the two years of grace given by Section 401(a) of the Nationality Act of 1940. 8 U.S.C.A. § 801(a). This legislation extended the right of dual nationals, who had not voluntarily expatriated themselves, to return to the United States by January 13, 1943. Thereafter such persons were "forever estopped" from claiming American citizenship. Plaintiffs made no move to avail themselves of the two year grace period.

■■ Plaintiffs urge that the war tolled the running of the period of grace. Legislative records indicate that this claim is

without merit.[1]  But even if the plaintiffs' view were adopted, the two years had run by the time of the first application, May 1947.  Congress approved the legislation October 14, 1940, to become effective January 13, 1941.  The American consulate in Rome closed five and one-half months later, June 30, 1941.  The American consulate opened again January 8, 1945.  Plaintiffs made their application during May 1947.  Exclusive of war periods, the American consulate was open for approximately thirty-four or thirty-five months before plaintiffs attempted to return to the United States.  Hence, even if the erroneous view that the war tolled the running of the statute were adopted, plaintiffs still did not make a timely application.

Upon the facts and the law, plaintiffs are not American citizens.

The foregoing shall be deemed to be the findings of fact and conclusions of law. If further findings of fact or conclusions of law are deemed to be necessary by the parties, they may be submitted.

Submit judgment in accordance herewith.

1. Report of the Committee on the Judiciary Pursuant to S.Res. 137, April 20, 1950, p. 748.

"Unlike the period of time allowed in other sections of the act for the return of American nationals abroad, that period of time allowed those who lost their citizenship through their parents' naturalization in a foreign state to return to the United States was not extended after January 13, 1943.  Consequently, all persons in this class who continued to reside abroad after that date are deemed to have elected against American citizenship and are at this time precluded from claiming it."