**PEDUZZI v. BROWNELL, Atty. Gen. et al.**

Civ. A. No. 4143–51.

United States District Court
District of Columbia.

June 30, 1953.

420

American passport at the consulate at Milan, and it was issued to her on August 29, 1946. She departed for this country on September 5, 1946, and has remained here since her arrival in September 1946. Plaintiff never voted in any Italian elections, never took an oath of allegiance to the King of Italy, never was employed by the Italian government, and never applied for Italian naturalization. During the war, she sheltered an American officer who had been shot down behind the lines and aided him to escape. After the occupation of Italy by United States troops, she was employed therein by the United States, and has been commended for her services by United States officers.

She has claimed certain rights as an American citizen, and the same have been denied her by defendants upon the ground that she is not a citizen. Upon this basis she brings an action for a declaration of American citizenship under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903, approved October 14, 1940.

Applying the law to these facts, it appears that plaintiff became an American citizen in 1924 by virtue of her father's naturalization and at the same time lost her Italian citizenship; that in 1932 her father reacquired Italian citizenship by reason of two years residence in Italy, and that this resulted in the reacquisition of Italian citizenship by plaintiff, derived from her father. She thus became a citizen of both Italy and the United States.

Jack Wasserman, Washington, D. C., for plaintiff.

Leo A. Rover, U. S. Atty., Ross O'Donoghue, Robert Scott, Asst. U. S. Attys., Washington, D. C., for defendant.

PINE, District Judge.

■ This action seeks a judgment declaring plaintiff to be a citizen of the United States. She was born in Italy on March 7, 1917, of Italian parentage. In 1920, when she was three years old, she came to the United States with her father. In 1924 he was naturalized as an American citizen. In 1930, when she was 13 years old, she was taken to Italy with her parents. She remained there until 1946, when she returned to the United States, arriving on September 18 of that year. Prior thereto, on April 18, 1946, she applied for an

Italy entered World War II on June 10, 1940, and thereupon direct transporation from Italy to the United States ceased. Transportation from Lisbon was available until December 1941. All American consulates were closed throughout Italy by July 9, 1941. On December 7, 1941, Japan attacked the United States at Pearl Harbor. On December 11, 1941, a state of war was declared between the United States and Italy. Northern Italy, in which plaintiff resided, was not liberated until April 1945. American consulates in northern Italy were opened shortly thereafter; in Milan, in which was the consulate nearest to plaintiff's residence, on February 1, 1946, and in Genoa on May 15, 1945. American con-

sulates in southern Italy were opened as follows: in Rome on January 8, 1945; in Palermo, February 11, 1944; and in Naples, July 1, 1944. V-E Day was May 7, 1945, at which time hostilities virtually ceased in Europe. On February 10, 1947, a treaty of peace was concluded between the United States and Italy. 61 Stat. 1246.

■ There is no dispute between the parties in respect of the foregoing facts and such conclusions of law as are therein stated. The dispute grows out of the provisions of Section 401 of the Nationality Act of 1940, 8 U.S.C.A. § 801, to which I shall now refer.

That section provides that "A person who is a national of the United States * * * shall lose his nationality by: (a) Obtaining naturalization in a foreign state * * * through the naturalization of a parent having legal custody of such person: * * * Provided further, That a person who has acquired foreign nationality through the naturalization of his parent or parents and who at the same time is a citizen of the United States, shall, if abroad and he has not heretofore expatriated himself as an American citizen by his own voluntary act, be permitted within two years from the effective date of his [sic] chapter to return to the United States and take up permanent residence therein, and it shall be thereafter deemed that he has elected to be an American citizen. Failure on the part of such person to so return and take up permanent residence in the United States during such period shall be deemed to be a determination on the part of such person to discontinue his status as an American citizen, and such person shall be forever estopped by such failure from thereafter claiming such American citizenship".

Two years from the effective date of the foregoing statute was January 13, 1943, and plaintiff, though otherwise coming within its exception, failed to return to the United States before the cut-off date named therein.

She has therefore lost her American citizenship unless the statute was tolled because of the war. There is no express pro-vision for tolling its operation, and the issue is whether it was tolled notwithstanding, and if so, for what period.

An analogous question was raised in the United States Court of Appeals for this circuit as recently as February 2, 1950, in the case of Salvoni v. Pilson, 86 U.S.App. D.C. 227, 181 F.2d 615, 616. There a money judgment had been entered, and in the District of Columbia the life of such judgment is twelve years unless it is revived. During that period the judgment creditor may cause the modern substitute for a scire facias to be issued and the judgment extended for an additional twelve years. More than twelve years after the date of the judgment in question, the appellant filed the necessary proceedings for the revival and extension of the judgment. The lower court denied relief, which the Court of Appeals held to be correct "unless the statute of limitations was suspended by reason of the war." The appellant, who had resided in Italy since 1937, urged that the statute was tolled for the period of the war. The statutory provision for the revival of the judgment, as here, contained no exception which enlarged the twelve-year period, but the Court held that "since the Revolutionary War * * * American courts have tolled statutes of limitations because of war * * * [and that] a treaty provision or specific authority is not necessary." It further stated as follows:

"Statutes of limitations ordinarily are not framed in contemplation of such conditions [provisions relating to war restrictions]; they assume that the one to whom an obligation is owed may sue in a court. If he does not avail himself of the opportunity so to do within a stated time his remedy is barred and the matter is put at rest. But if war intervenes so that the remedy indeed does not exist during all of the statutory period, the time thus taken from it is added when the end of the war brings a resumption of intercourse, communication and access to a court. The full vigor of such a principle, long established by the judiciary and based

upon a fundamentally just appraisal of conditions created by war, should not be weakened unless strong reasons so require."

Applying this doctrine, I assume that the statute in this case was tolled unless Congress intended the contrary, to which point I shall now turn.

At the time of the enactment of this statute, Italy had entered the war on the side of Germany, but this country was at peace with her and the rest of the world. To be sure, it was an uneasy peace, and travel conditions between Italy and this country were seriously disrupted. However, the American consulates were open in Italy, and our participation in the war was not generally considered inevitable. It was in this context that the statute in question was enacted, and it would be reasonable to assume that Congress provided the two-year limitation for return to the United States in the light of the then existing conditions and with the expectation, or at least the fervent hope, that they would not worsen. But, as we now unhappily know, they did, and so far as Italy is concerned, all American consulates, to which an American citizen in Italy would turn for a passport, were closed on July 9, 1941, approximately six months from the effective date of the Nationality Act. From then until May 1945, they remained closed so far as northern Italy is concerned, and plaintiff was thereby abruptly deprived of the two-year period which Congress had provided for the retention of citizenship, unless she wished to take the risk of travel in foreign countries in time of war without the protection of an American passport to which she was entitled. In addition, her departure from Italy without permission of the Italian government would have involved a violation of Italian law, at least after our entry into the war. Surely Congress did not expect such hardihood, nor did it intend that the two-year period should be reduced to approximately six months for all practical purposes. That would assume Congress enacted the statute with a war in view, which is an assumption too unreasonable to indulge, for on such

assumption the two-year period could have been completely extinguished, instead of being substantially diminished, by the closing of the consulates and the outbreak of war before its effective date, ninety days after enactment. I am therefore brought to the conclusion that it is not contrary to Congressional intent to find that the statute was tolled during the period it was nullified by the public enemy for all practical purposes. To hold otherwise would ascribe to Congress an intention to deprive American citizens of the precious right of citizenship by purportedly giving two years to preserve it for all persons in plaintiff's category wherever they might reside, but actually limiting it in the case of persons situated as plaintiff to approximately six months. Such imputation I cannot make, but instead believe that the statute, in fairness and of necessity unless it be a hollow shell, was tolled as indicated.

It might be argued that she should have gone to the American consulates in southern Italy which were opened somewhat earlier, but that would have involved crossing battle lines, which I likewise cannot believe Congress intended to require in providing the two-year period for return. In addition, it is no exaggeration to assert that during the period while the consulates were closed, and probably for some time prior and subsequent thereto, transportation facilities for return to the United States were limited to the extent of being practically nil. Of course, people did return, but such an undertaking, at least during hostilities, required a high degree of daring and enterprise, as well as financial resources. I am certain Congress did not intend to exact such superlative qualities for the retention of citizenship.

Nor do I believe, as pressed upon me by defendants, that the Drottningholm incident effects any change in the views I have reached. There a total of 193 American citizens left Italy in June 1942 to go to Lisbon for the purpose of proceeding to the United States on the S.S. Drottningholm, but such persons were selected by the Swiss government acting in behalf of the United States, on the basis of humanitarian

considerations, without any assistance from any United States agency and only with the consent of the Italian and German governments. By no stretch of the imagination can that be considered a restoration of prewar conditions or an incident in legislative contemplation, from which it should be inferred that Congress intended that the statute be not tolled in the event of war.

I am aware that Judge Kaufman, of the Southern District of New York, and Judge Kirkland, of this court, for whose opinions I have high regard, have recently expressed the view [1] that this statute was not tolled, but their decisions were not predicated on such view, and I have not been convinced of is correctness.

Also, the fact that a later Congress did not extend the statute in question, although the opportunity to do so was presented to it, does not persuade me, as contended by defendants, that it was the intention of the earlier Congress to restrict the period of limitation without regard to war.

I am therefore of the opinion that, in respect of persons in plaintiff's situation, the statute was tolled from July 9, 1941, when the American consulates were closed, until May 15, 1945, when they were first reopened in northern Italy, approximately three weeks after its liberation. As stated, the Nationality Act became effective on January 13, 1941, and slightly less than six months had run before the consulates were closed in Italy. Plaintiff returned to this country on September 18, 1946, slightly more than sixteen months from the date the first consulate was reopened in northern Italy. She therefore returned to the United States within the two-year period provided by law for the retention of her citizenship, the statute being tolled for the period stated.

I find that plaintiff is an American citizen, and judgment will be entered accordingly. This opinion will suffice for findings and conclusions unless counsel desire to supplement the foregoing, in which case they may make timely motion to that end.

---

1.  Mastrocola v. Acheson, D.C., 105 F.Supp. 580; Gaudio v. Dulles, D.C., 110 F.Supp. 706.