## YOUNG *v.* UNITED STATES.

No. 86. Argued December 17, 1941.—Decided February 2, 1942.

*Mr. Fred Patterson* submitted for petitioner.

*Solicitor General Fahy,* with whom *Assistant Attorney General Berge* and *Messrs. Oscar A. Provost, Louis B. Schwartz,* and *W. Marvin Smith* were on the brief, for the United States.

Mr. Justice Murphy delivered the opinion of the Court.

Petitioner, a practicing physician, was convicted on eight counts of an indictment charging violation of § 6 of the Harrison Anti-Narcotic Act, as amended.[1] That section, so far as here material, provides:

"That the provisions of this Act shall not be construed to apply to the manufacture, sale, distribution, giving

---

[1] 40 Stat. 1132, 26 U. S. C. Supp. V, § 2551 (a) and (b).

away, dispensing, or possession of preparations and remedies which do not contain more than two grains of opium . . . in one fluid ounce . . .: *Provided,* That such remedies and preparations are manufactured, sold, distributed, given away, dispensed, or possessed as medicines and not for the purpose of evading the intentions and provisions of this Act: *Provided further,* That any manufacturer, producer, compounder, or vendor (including dispensing physicians) of the preparations and remedies mentioned in this section lawfully entitled to manufacture, produce, compound, or vend such preparations and remedies, shall keep a record of all sales, exchanges, or gifts of such preparations and remedies . . ."

The evidence is undisputed that petitioner gave the preparations in the quantities charged in the indictment to patients whom he personally attended. He kept no records. His defense, that the second proviso of § 6 is not an independent and affirmative requirement but merely a condition precedent to the exemption created by that section, was rejected by the court below, which took the position that the second proviso is an unconditional requirement that all vendors of exempt preparations keep records.[2]

The Government confessed error and we brought the case here. 314 U. S. 595.

The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors

---

[2] 119 F. 2d 399.

confessed. See *Parlton* v. *United States*, 75 F. 2d 772. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as to that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties. Cf. *Rex* v. *Wilkes*, 4 Burr. 2527, 2551, 98 Eng. Rep. 327; *State* v. *Green*, 167 Wash. 266, 9 P. 2d 62.

The Government's confession of error was originally two-fold: first, that while the second proviso of § 6 was subject to two possible constructions, the administrative construction had been that it was not an independent penal provision, and therefore the ambiguity should be resolved in favor of petitioner; and, secondly, that the second proviso, even if it be regarded as an independent penal provision, does not apply to a physician who administers exempt preparations solely to patients whom he personally attends. Upon reconsideration the Government has withdrawn its first ground of confession of error. We put to one side that question, since we are of opinion that there must be a reversal on the second ground.

Assuming, without deciding, that the second proviso of § 6 is an independent penal provision, it requires that records be kept only by "any manufacturer, producer, compounder, or vendor (including dispensing physicians)." We think that Congress, by the use of the words "dispensing physicians," meant to exclude physicians administering to patients whom they personally attend.

That not all physicians are required to keep records is manifest from the use of the qualifying adjective "dispensing." And, the physician must be one who manufactures, produces, compounds, or vends, or possibly only one who vends if the parenthetical phrase applies only to "vendor," the drugs. These are not appropriate words to

describe the function of a physician who administers exempt preparations to patients whom he personally attends.

This construction is borne out by a consideration of the Act as a whole. The word "administer" more appropriately describes the activities of a doctor in personal attendance than does the word "dispense." Admittedly, the words "dispense" and "dispensing" are used in several senses in the Act, but Congress evidently was aware of the differentiation between "administer" and "dispense," for, when it wished to include all possible functions of physicians with respect to drug distribution, it used both terms in conjunction. Section 1 of the Act in defining those required to pay a special tax speaks of "physicians . . . lawfully entitled to distribute, dispense, give away, or administer," and makes it unlawful for any person "to purchase, sell, dispense or distribute" any drugs otherwise than in and from the original stamped package, excepting the "dispensing, or administration, or giving away of any of the aforesaid drugs to a patient" by a practitioner where "dispensed or administered to the patient for legitimate medical purposes."

Section 4 exempts from the prohibition of interstate shipments and deliveries of drugs by persons who have not registered and paid a special tax deliveries by "any person who shall deliver any such drug which has been prescribed or dispensed by a physician." The omission of the word "administer" indicates that Congress recognized that shipments and deliveries would ordinarily not be involved where the physician was administering while in personal attendance.

In § 2 (a), dealing with true narcotics, Congress unequivocally exempted physicians from record keeping where in personal attendance upon patients. It is difficult to perceive why a different requirement should obtain when a physician, under similar circumstances, administers

preparations containing only a limited amount of narcotics, such as the paregoric, cough syrup, etc., involved in this case. The word "dispense" is evidently used in § 2 (a) in a sense broad enough to include personal administration of drugs by an attending doctor, but the express exception of the personal attendance cases removes any ambiguity as to the scope of "dispense" in this context.

The construction of the parenthetical phrase "(including dispensing physicians)" as encompassing only doctors who would be covered by the word "vendor" does not imply that Congress was tautologic, but rather that it acted cautiously to preclude any contention that physicians selling drugs were not "vendors" because of their professional status.

The legislative history of the second proviso of § 6 supports the view that the words "dispensing physicians" were intended to apply only to physicians acting as dealers in the sale of drugs. The phrase "vendor (including dispensing physician)" was substituted for "the dealer who knowingly sells" exempt preparations.[3]

Upon the evidence in this case, petitioner was not a "dispensing physician" within the meaning of the second proviso of § 6. The judgment is reversed and the cause remanded to the United States District Court for the Territory of Hawaii for such further proceedings as may be required in the light of this opinion.

*Reversed.*

MR. JUSTICE ROBERTS and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[3] See 57 Cong. Rec. 771 and H. Rept. No. 1037, 65th Cong., 3d Sess., pp. 37, 87–88.

In offering the committee amendment which embodied the record-keeping requirement, Senator McCumber said:

"Before the committee there was a proposition made compelling druggists who compounded any of these habit-forming drugs also to keep a list of the persons to whom they furnished them, a list of the goods, and so forth." 57 Cong. Rec. 771.