## MANDOLI v. ACHESON, Secretary of State.

### No. 10958.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 6, 1951.

Decided Jan. 10, 1952.

Jack Wasserman, Washington, D. C., for appellant.

Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty. at the time the brief was filed, and Joseph M. Howard and C. Frank Reifsnyder, Asst. U. S. Attys., all of Washington, D. C., were on the brief, for appellee.

Charles M. Irelan, U. S. Atty. at the time of argument, Washington, D. C., also entered an appearance on behalf of appellee.

Before EDGERTON, PROCTOR, and BAZELON, Circuit Judges.

EDGERTON, Circuit Judge.

■ Appellant was born in the United States of Italian parents. He therefore had dual citizenship at birth. When he was four months old his parents took him to Italy. He has lived there ever since. He speaks no English. After he came of age he made no attempt to return to the United States until 1937 when he was 29 or 30 years old. He is now 44. We think it follows from Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, affirming 69 App.D.C. 175, 99 F.2d 408, that the District Court was right in denying his claim for a declaratory judgment that he is an American citizen.

■ Perkins v. Elg involved a former dual citizen whose conduct on coming of age was very different from the present appellant's. The Supreme Court said: "The question is whether the plaintiff, Marie Elizabeth Elg, who was born in the United States of Swedish parents then naturalized here, has lost her citizenship and is subject to deportation because of her removal during minority to Sweden, it appearing that her parents resumed their citizenship in that country but that she returned here on attaining majority with intention to remain and to maintain her citizenship in the United States. * * * In 1929, within eight months after attaining majority, she obtained an American passport which was issued on the instructions of the Secretary of State. She then returned to the United States, was admitted as a citizen and has resided in this country ever since." 307 U.S. at 327, 59 S.Ct. at page 886. Because of her act and intent in returning to America shortly after she became of age, the Court held she had not lost her American citizenship. The Court made it clear that the critical fact was her prompt return and that if she had voluntarily remained abroad for many years after she came of age she would have lost her American citizenship. The Court said: "It has long been a recognized principle in this country that if a child born

here is taken during minority to the country of his parents' origin, where his parents resume their former allegiance, he does not thereby lose his citizenship in the United States *provided that on attaining majority* he elects to retain that citizenship and to return to the United States to assume its duties. * * * there is no basis for invoking the doctrine of expatriation where a native citizen who is removed to his parents' country of origin during minority *returns here on his majority* and elects to remain and to maintain his American citizenship." (Emphasis added.) 307 U.S. at pages 329, 334, 59 S.Ct. at page 887.

■ The Supreme Court referred in identical terms to the rights of a child, born here, "*who may be,* or may become" subject to dual nationality. 307 U.S. at page 334, 59 S.Ct. at page 889. (Emphasis added). The reasoning and the conclusions of the Court are equally applicable to either situation. We know of no reason why one who, like the appellant, is born Italian as well as American should have less need to elect American citizenship when he comes of age than one who is is born American and acquires dual citizenship during minority. We have not overlooked the fact that there have been administrative rulings and at least one judicial decision [1] that a dual citizen from birth does not lose his citizenship by failing to claim it within a reasonable time after he comes of age. We think that view erroneous. We find no support for it in section 401(a) of the Nationality Act of 1940, 54 Stat. 1168, 8 U.S.C.A. § 801(a); even apart from the fact that the appellant had already expatriated himself by his conduct long before the Act was passed. Section 401(a) provides among other things that an American citizen who acquires foreign nationality during his minority shall lose his American citizenship unless he returns to the United States for permanent residence before he is 23 years old. But section 401(a) deals with the general subject of "Obtaining naturalization in a foreign state". It does not deal with the general subject of dual citi-

[1]. In the Matter of R. . . ., Administrative Decisions under Immigration and Nationality Laws, Vol. 1, p. 389 (1943); Tomasicchio v. Acheson, D.C., D.C., 98 F. Supp. 166.

922

zenship. By omitting to legislate with regard to dual nationals from birth, Congress left the pre-existing law in effect as to them.

This conclusion is not affected by section 408 of the Nationality Act, 8 U.S.C.A. § 808, which provides: "The loss of nationality *under this chapter* shall result solely from the performance by a national of the acts or fulfillment of the conditions specified in this chapter." (Emphasis added.) This section seems to mean that loss of nationality under the Nationality Code shall result only as provided in that Code. Though this literal reading makes the section a mere truism we prefer it to an alternative construction that has been suggested, which would make the section mean that loss of nationality shall result only as provided in the Nationality Code. We prefer it for two reasons. (1) It is what the words, and all the words, of this section literally say, whereas the suggested alternative construction can only be reached by reading out of the section the words "under this chapter". (2) The alternative construction would produce a strange result. It would mean that one who, like the appellant, is a born Italian as well as a born American, may live as an Italian in Italy as long as he likes and assert American citizenship whenever he chooses, although a born American who is not a born Italian but has become a naturalized Italian by the action of his parents during his minority loses his American citizenship unless he returns to America for permanent residence before he is 23 years old. The conclusion that Congress intended no such result is confirmed by a statement of Representative Dickstein, Chairman of the Committee on Immigration and Naturalization, on the floor of the House during debate on the Nationality Code: " * * * this bill would put an end to dual citizenship and relieve this country of the responsibility of those who reside in foreign lands and only claim citizenship when it serves their purpose." 86 Cong.Rec. 11944 (1940).

Accordingly we agree with the District Court that "Plaintiff expatriated himself by continuous residence in Italy after attaining his majority and by his failure to elect American citizenship by returning to the United States and taking up permanent residence therein." We need not consider whether an oath of allegiance to the King of Italy, which appellant was obliged to take when he was drafted into the Italian army, was in itself enough to expatriate him.

Affirmed.