CASEY ET AL. *v.* UNITED STATES.

No. 379. Submitted March 3, 1952.—Decided June 9, 1952.

*F. M. Reischling* submitted on brief for petitioners.

*Solicitor General Perlman, Assistant Attorney General McInerney, James L. Morrisson, Beatrice Rosenberg* and *Murry Lee Randall* submitted on brief for the United States.

PER CURIAM.

The controlling claim in this case is that there was an unreasonable search and seizure of evidence, the admission of which vitiated the convictions. Before determining these issues conflicting views as to the facts in this case and the inferences to be drawn from them would have to be resolved. The Solicitor General confesses error and asks that the judgment below should be reversed as to all the petitioners, leaving of course the way open for a new trial. To accept in this case his confession of error would not involve the establishment of any precedent.

Accordingly we reverse the judgment as to all the petitioners.

*Reversed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE REED join, dissenting.

I do not believe we should take our law from the Department of Justice or from any other litigant. The rea-

sons why the Department of Justice confesses error in a case may be wholly honorable. For example, those in the Solicitor General's office may be honestly converted to the point of view which their colleagues opposed below. I assume that is true in the present case. But I also know that litigants usually have selfish purposes. What the motivation behind a particular confession of error may be will seldom be known. We cannot become a party to it without serving the unknown cause of the litigant.

The practice in cases in which the Solicitor General confesses error was settled by *Young* v. *United States,* 315 U. S. 257 (1942). When the Government confessed error on Young's petition for certiorari, the confession was not accepted but, instead, the petition was granted and the case set down for argument. 314 U. S. 595 (1941). In the unanimous opinion of the Court, two Justices not participating, the function of this Court upon the Government's confession of error was described with particularity:

"The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. See *Parlton* v. *United States,* 75 F. 2d 772. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as to that of the enforcing officers. Furthermore, our judg-

ments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties. Cf. *Rex* v. *Wilkes,* 4 Burr. 2527, 2551, 98 Eng. Rep. 327; *State* v. *Green,* 167 Wash. 266, 9 P. 2d 62." 315 U. S., at 258–259.

As a result, the Court proceeded to examine the errors urged by petitioner and, upon consideration of the record, reversed the judgment of the Court of Appeals.[1]

The principles announced in *Young* v. *United States, supra,* were expressly reaffirmed in *Gibson* v. *United States,* 329 U. S. 338, 344 (1946); cf. *Marino* v. *Ragen,* 332 U. S. 561, 562 (1947).[2] Moreover, the practice of this Court in cases in which the Solicitor General confesses error has followed the *Young* rule. Unlike today's *per curiam,* our recent *per curiam* orders and opinions have been careful to note that our reversal of a court of appeals judgment is based upon consideration of the record, not blind acceptance of a confession of error.[3]

---

[1] During the same term of Court as *Young* v. *United States, supra,* the Government also confessed error in *Weber* v. *United States.* The Court granted certiorari, 314 U. S. 600 (1941), heard argument, and affirmed the Court of Appeals judgment by an equally divided Court. 315 U. S. 787 (1942).

[2] In *Upshaw* v. *United States,* 335 U. S. 410 (1948), the Government had confessed error in the Court of Appeals for the District of Columbia. That court, adhering to its precedent in *Parlton* v. *United States,* 64 App. D. C. 169, 75 F. 2d 772 (1935) (cited with approval in *Young* v. *United States, supra,* at 259), conducted an independent examination of the errors confessed. 83 U. S. App. D. C. 207, 168 F. 2d 167 (1948). This Court reversed in a 5–4 decision without suggesting that the Court of Appeals had erred in considering the merits of the Government's position.

[3] *Cates* v. *Haderlein,* 342 U. S. 804 (1951); *Chiarella* v. *United States,* 341 U. S. 946 (1951); *Ryles* v. *United States,* 336 U. S. 949 (1949); *Bellaskus* v. *Crossman,* 335 U. S. 840 (1948); *Fogel* v. *United States,* 335 U. S. 865 (1948); *Wixman* v. *United States,* 335 U. S. 874 (1948); *Mogall* v. *United States,* 333 U. S. 424 (1948).

We sit in this case not to enforce the requests of the Department of Justice but to review the action of a lower court. Here the Court of Appeals ruled that petitioners had no standing to complain of the search. That ruling is questionable in view of the intervening decision of this Court in *United States* v. *Jeffers*, 342 U. S. 48. But the confession of error is not limited to that ruling. The Department of Justice now maintains that the District Court was in error in ruling in the Government's favor on the issue of search and seizure.

The facts are not in dispute. The only question is the reach of our decision in *Carroll* v. *United States*, 267 U. S. 132. That decision states a principle of constitutional law. Until it is reversed or modified, it prescribes a rule for the courts to apply according to their best lights, not according to the desires of either the prosecution or the defense.

Since the Court of Appeals did not reach that issue when the case was before it, we should at the very least remand the case to it for consideration of that question. If we are to decide it, we should do so only after full exploration of the facts and the law. Whatever action we take is a precedent.

I cannot state too strongly my belief that if the courts are to retain their independence, they must decide cases taken on the merits. A confession of error by a litigant is, of course, an important factor to take into account in studying a record.[4] It may disclose an intervening decision on a question of law that undermines the lower

---

[4] Similarly, the fact that the Solicitor General does not oppose the granting of a petition for certiorari is entitled to respect, see, *e. g.*, *Wong Yang Sung* v. *McGrath*, 339 U. S. 33, 36 (1950). But it has never followed that we should automatically grant certiorari because of the Government's consent to such action. *E. g.*, *Community Services, Inc.* v. *United States*, 342 U. S. 932 (1952) (certiorari denied); *Dollar* v. *United States*, 342 U. S. 910, (1952) (certiorari denied).

court's conclusion; it may disclose perjury by an important witness or newly discovered evidence; it may disclose other factors which weaken the conclusion of the lower court. Or it may disclose a maneuver to save one case at the expense of another.[5] Once we accept a confession of error at face value and make it the controlling and decisive factor in our decision, we no longer administer a system of justice under a government of laws.

---

[5] The Ninth Circuit Court of Appeals affirmed a treason conviction, one ground of affirmance being that the methods of expatriation listed in the Nationality Act of 1940, 54 Stat. 1168, were exclusive. *Kawakita* v. *United States*, 190 F. 2d 506, 511–514 (1951). We granted certiorari, 342 U. S. 932, and affirmed the Court of Appeals without resolving the question. 343 U. S. 717. The Solicitor General urged in support of the conviction that the expatriation procedures of the Nationality Act were exclusive.

In the District of Columbia Circuit, a judgment denying a claim of citizenship was affirmed, one ground of affirmance being that methods of expatriation listed in the Nationality Act of 1940 were not exclusive. *Mandoli* v. *Acheson*, 193 F. 2d 920, 922 (1952). In his memorandum in response to the *Mandoli* petition for certiorari, the Solicitor General, adhering to his position in *Kawakita*, asserted that this ground of the Court of Appeals decision in this case is "clearly erroneous."