**Mike GEORGES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17303.**

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1959.

Rehearing Denied Feb. 5, 1959.

W. R. Smith, San Antonio, Tex., Dobbins, Howard & Smith, San Antonio, Tex., for appellant.

John E. Banks, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before TUTTLE, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

Among the statutes enacted by the Congress in 1951 was the Boggs Act amending the Narcotic Import and Export Act. It provided that:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be fined not more than $2,000 and imprisoned not less than two or more than five years. For a second offense, the offender shall be fined not more than $2,000 and imprisoned not less than five or more than ten years. * * *" 65 Stat. 767.

The Narcotic Control Act of 1956, 70 Stat. 567, amended the quoted statute by fixing the prison term for a first violation at not less than five or more than twenty years; and for a second or subsequent offense, at not less than ten or more than forty years. 70 Stat. 570, 21 U.S.C.A. § 174.

The appellant, Mike Georges, and his brother, George Georges, were indicted on May 7, 1957, and charged with violations of the statute. The indictment was in six counts. The first count of the indictment charged George Georges with receiving, concealing and facilitating the transportation and concealment of 79 grains of heroin; the second count charged George of a like offense on a different date of 64 grains of heroin; the third count charged George with the sale of 64 grains of heroin; the fourth count charged George and Mike with receiving, concealing and facilitat-ing the transportation and concealment of 340 grains of heroin; the fifth count charged George with the sale of 340 grains of heroin. By the sixth count George and Mike were charged with conspiring to receive, conceal and facilitate the transportation and concealment of heroin in violation of 21 U.S.C.A. § 174. The conspiracy was alleged to have occurred between February 15, 1957, and April 4, 1957. George and Mike were represented by an attorney employed by them. After each had entered a not guilty plea to each count, and on May 20, 1957, George Georges entered pleas of guilty to the fifth and sixth counts and Mike Georges entered a plea of guilty to the sixth count. The United States Attorney filed an information showing that Mike Georges had been previously convicted of a narcotics offense on May 6, 1955. The sentencing was postponed until May 23, 1957. On that date the court asked their attorney if he had anything to say before sentence was pronounced. As to George Georges the attorney stated "he finally yielded to temptation and committed the offense as charged." Counsel for the brothers continued, "As far as Mike is concerned, his brother informs me that the only thing he had to do with the whole transaction was he let him use his house. I don't know what the report shows, but that's what both of them tell me." Although asked if they wished to do so, neither Mike nor George had anything to say for themselves. George was sentenced to eighteen years imprisonment and a fine of one hundred dollars. Mike was sentenced to serve fifteen years and pay a fine of one hundred dollars. With leave of course the other counts of the indictment were dismissed.

Nearly a year after he was sentenced, and represented by other counsel, Mike Georges filed a motion under Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[1] to set aside his con-

1. "A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

viction and permit him to withdraw his plea of guilty. In his motion the appellant represented that he was not guilty of any offense charged in the indictment. His motion recited that he was advised by his attorney that if he would plead guilty to the conspiracy charge the Government would dismiss the other count against him, and that if George would plead guilty to the fifth and sixth counts the other charges against him would be dismissed. The brothers asked their attorney, so it is said in the motion, as to the maximum prison sentence of each if they entered pleas of guilty. They were told by their attorney that George, on counts five and six, could not be sentenced for more than five years on each count and Mike could not be sentenced to more than five years on count six. The appellant further stated in his motion that he feared that, although innocent, he would be convicted and he wanted to save himself from more than a five-year sentence and save George from more than a ten-year sentence. The appellant attached to his motion a statement of the attorney who had represented him prior to and at the time he entered his plea of guilty.[2] He corroborated the appellant's statement as to the advice given regarding the maximum prison sentences. Further references to this statement will be made.

At the hearing on the appellant's motion the attorney who had represented him was called as a witness. On direct examination he testified that he had practiced law for fifty-seven years and had handled many cases in the Federal courts. He said he had told the Georges brothers they could not receive more punishment than five years on the conspiracy count and when he gave this advice he didn't

2. "I * * * am a member of the State Bar of Texas duly admitted to practice in this Court, and I have practiced regularly herein for a period of forty (40) years.

"My practice in this Court has included the defense of many criminal cases, including cases involving charges of conspiracy to violate the laws of the United States under Article 371, Title 18, U.S. Code, and cases involving charges of violation of the Harrison Act, 26 U.S. C.A. (I.R.C.1954) § 4701 et seq., and of the Narcotic Drugs Import and Export Act.

"After the indictment was returned in this case against Mike Georges and George Georges, I was employed by Mike Georges to advise him and his brother, George Georges, with reference to such indictment and their rights and liabilities thereunder.

"I was present with them in this Court on May 9, 1957, when they each entered pleas of Not Guilty to the charges against them respectively as contained in the indictment herein.

"I was then requested by them to confer with the United States Attorney to see what could be done about minimizing the charges. I did this prior to May 20, 1957, and I was informed by the Assistant United States Attorney, Mr. Parrott, that he would cause the dismissal of Counts No. 1, 2, 3, and 4 as to George Georges and Count No. 4 as to Mike Georges if George would plead guilty to Counts 5 and 6 and if Mike would plead guilty to Count 6 (Mike was under indictment only on Counts 4 and 6). I then informed defendants of what the Assistant United States Attorney had told me, and being requested by them for advice as to the maximum prison sentences that could be imposed upon them by the Court, I advised them as follows:

"That George, who I understood was a first offender, could be sentenced to a maximum of five years in prison under Count No. 5 and to a maximum of five years in prison under Count No. 6, for a total not to exceed ten years; and

"That Mike could be sentenced to a maximum of five years in prison under Count No. 6.

"At the time I gave this advice I was under the impression that Count No. 6 was drawn exclusively under Article 371, Title 18, US Code, and the caption of the indictment itself so indicated. I was not at that time aware that the 1956 amendment to the Narcotic Drugs Import and Export Act contained a built-in conspiracy provision and I was also unaware that the amendment increased the maximum penalty for a first offender to twenty years imprisonment. I was also unaware of the 1956 amendment to the penalty provision (Section 7237, Title 26, US Code,) which increased the provision of five years maximum for first offenders under the Harrison Act to twenty years."

know anything about the amendment to the penalty provisions. On cross-examination the lawyer admitted representing clients charged with violating 21 U.S.C.A. § 174 since the 1951 amendment and of preparing a brief and making an argument on the sufficiency of an indictment charging a violation of that provision. When he was asked if he had not read the section he answered, "I probably read the punishment part as far as that's concerned; I may have known the law at that time, but I just didn't remember." He didn't recall whether he checked the indictment or not and then said, "Well, I don't know if I ever read this indictment—just glanced over it." Again he said, "I told you I never did read over the indictment with a view to—if a man pleads guilty, why, there's no use wasting much time on an indictment."

On redirect examination the lawyer-witness swore that the facts stated in his statement annexed to the motion were true and correct. On recross-examination he admitted the incorrectness of the recital in the statement that he was unaware of the conspiracy provision in 21 U.S.C.A. § 174. As to this he said, "I'm quite sure at some time in the past I did have a knowledge of it, because I've had that statute up many, many times, and I'm quite sure I had read it, but you may read things time and time again and still forget them."

The attorney who had acted for the appellant when entering his plea and receiving his sentence included in his testimony the statement that, "As far as George Georges was concerned, why, from what he told me, there wasn't any question in the world but that he was guilty, but George and Mike always did claim that Mike didn't know much about that Mike's house was used by George." Also he testified, "Well, Mike always insisted that his only connection was that that was his house."

The district court overruled the motion of the appellant to withdraw his plea of guilty. Notice of appeal was given, the record was prepared and filed and the appellant's brief was submitted. The United States Attorney who had represented the Government at the hearing filed a well prepared and persuasive brief advocating the affirmance of the district court's order. Thereafter, upon the direction of the Solicitor General of the United States, the District Attorney filed in this Court a Confession of Error reciting that further opposition to appellant's appeal to withdraw his plea should be dropped. The reason assigned [3] was

3. "The decision to confess error in this case is based entirely upon the limited and particular facts of this case, and the combination of factors as set forth below. It is the position, and continues to be the position, of the appellee herein that bad advice given by an attorney to his client is not, standing alone, a sufficient basis for the withdrawal of a plea of guilty. However, under the particular circumstances presented here, to-wit, the combination of several factors presented by this particular record, the United States concludes that it would be error and a manifest injustice to allow a plea of guilty to stand.

"The combination of factors that have lead to this conclusion are as follows:

"1. The erroneous advice of counsel here was not on a matter which involved judgment or doubtful law, as to which there could be differences of opinion. It was clearly wrong on a simple issue.

"2. The erroneous advice was at the maximum possible sentence, a factor which goes to the question of whether the plea was entered knowingly.

"3. To the above two facts there is added the significant fact that the record lends support to the defendant's protestation that he would not have pleaded guilty except for the erroneous advice. In his presentence statement, counsel for defendant said that both defendants claimed appellant was involved only insofar as he let his brother, George Georges, use his house. On the hearing on the motion to withdraw, counsel stated that the brothers always claimed that Mike Georges, appellant herein, did not know his house was being so used, and that he could not say whether appellant was pleading guilty solely because he was guilty or because he believed that the maximum sentence would be five years. In the absence of further inquiry by the

the combination of factors of the case. Because of the stressing of the "combination of factors" by the Government we have gone to greater length in the recital of facts than we might otherwise have done.

■ Whether or not the district court should permit a plea of guilty to be withdrawn is, under Rule 32(d) Fed.Rules Crim.Proc., a discretionary matter. In the absence of a showing of abuse of discretion the judgment of the trial court should be affirmed. Powers v. United States, 5 Cir., 1951, 188 F.2d 355; Mitchell v. United States, 5 Cir., 1950, 179 F.2d 305.

The duty of an appellate court in a case where the Government has confessed error has been set forth by the Supreme Court. It has said:

"The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. See Parlton v. United States, 64 App.D. C. 169, 75 F.2d 772. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers. Furthermore, our judgments are

precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." Young v. United States, 315 U.S. 257, 62 S.Ct. 510, 511, 86 L.Ed. 832. See also Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331; Casey v. United States, 343 U.S. 808, 72 S.Ct. 999, 96 L.Ed. 1317; Orloff v. Willoughby, 345 U. S. 83, 73 S.Ct. 534, 97 L.Ed. 842; United States ex rel. Marino v. Holton, 7 Cir., 1956, 227 F.2d 886, certiorari denied 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868.

With such admonition before us we consider the single question raised by the appeal; that is, whether the trial court abused its discretion in refusing to permit the appellant to withdraw his plea of guilty.

■ It should be noted that the appellant does not contend that his plea of guilty was made because of any inducements, promises, threats, coercion or other conduct of the court, Government counsel or law enforcement officers. The contrary is demonstrated by the evidence. We are asked to hold that the plea of guilty made, under the circumstances here present, by the appellant in reliance upon erroneous advice given by counsel of his own choice as to the maximum sentence should be set aside as manifestly unjust. We think the rule, several times declared, is and should be that manifest injustice does not result from a plea of guilty following erroneous advice of counsel as to the penalty which could be imposed. United States v. Parrino, 2 Cir., 1954, 212 F.2d 919, certiorari denied 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663; Ridgeway v. United States, 6 Cir., 1953, 205 F.2d 680; United States v.

---

trial court before accepting such plea, the present protestations are difficult to refute.

"Appellee desires to stress the fact that the confession of error is limited to the particular circumstances presented by the combination of factors discussed above. Appellee further takes the position that one of the factors, standing alone, would not be a sufficient basis to

justify the withdrawal of the plea of guilty.

"Conclusion

"Based upon the record as a whole and the factors set forth above, the appellee in this case respectfully confesses that error has been committed and that it would be manifesly unjust to allow the plea to stand."

Weese, 2 Cir., 1954, 145 F.2d 135. Cf. Gray v. Ellis, 5 Cir., 1958, 257 F.2d 159; Kennedy v. United States, 5 Cir., 1958, 259 F.2d 883. This rule should not apply it is contended, where the erroneous advice is compounded with the other factors here present. It is appropriate then that the circumstances be examined.

■ When the sentence was pronounced no objection was then interposed as to its severity by either appellant or his attorney as might be expected upon the giving of a sentence three times the length believed possible. The attorney who stated that he had badly advised his client did not then seek any relief. He made no statement to the court or Government counsel as to what had transpired. "A delicacy" was his excuse for not doing so. Such a reason given by an attorney for failing to attempt the extrication of a client from the plight into which the lawyer's mistake has brought him might well be regarded as untenable.

At the time of the sentence counsel for the appellant stated that "the only thing he [the appellant] had to do with the whole transaction was he let him [George Georges] use his house." This statement, as we read it, would justify the inference that the appellant provided the house as the place for the carrying on of the traffic in narcotics as his part of the unlawful transaction. Indeed, we do not see that any other inference is plausible. The statements of the attorney as a witness at the hearing are not, we think, in conflict with this conclusion. There his statement was "Mike didn't know much about that Mike's house was used by George"; and "Mike always insisted that that his only connection was that it was his house." From these statements it may be inferred that, although Mike may not have known "much" about the use, he did know something, and that the use of the house permitted by him was in "connection" with transactions in narcotics. In the Government's brief it is stated that "The record on its face showed the defendant guilty of having furnished his brother a base of opera-tions from which to work, thus facilitating the illegal activities of the brother." This statement, we think, is more in accord with that which the record reflects than is the statement in the Confession of Error that "the brothers always claimed that Mike Georges, appellant herein, did not know his house was being so used."

The district court might well have entertained doubts with respect to the statement and testimony of the attorney who represented the appellant prior to and at the time of the entry of his plea of guilty. The statement filed with the motion recited that he was unaware that the 1956 amendment to the Narcotic Drug Import and Export Act contained a conspiracy provision, and that he was unaware of the penalty increases of the 1956 Act. After swearing to the truth of the statement he admitted prior knowledge of the conspiracy provision in the 1951 Act and the provision permitting in excess of five years for second offenders and blamed the bad advice which he said he gave upon a bad memory. In the statement appellant's counsel said that when he gave the advice he was under the impression that the conspiracy count was drawn exclusively under 18 U.S.C.A. § 371. In Count 6, the conspiracy count to which the plea of guilty was entered, 21 U.S.C.A. § 174 is mentioned and 18 U.S.C.A. § 371 is not, although both are in the caption of the indictment. This might have caused the district court to doubt the statement that counsel was under the impression that the conspiracy count was drawn exclusively under the general conspiracy statute. If such a doubt existed it was hardly dispelled by the counsel's testimony that he didn't know whether he read the indictment.

■■ The statute on which an indictment is based is to be determined from the facts charged rather than the statute referred to. As between two statutes punishing conspiracy, the particular statute is to be preferred over the general statute. Enzor v. United States, 5 Cir., 1958, 262 F.2d 172; Masi

v. United States, 5 Cir., 1955, 223 F.2d 132; Price v. United States, 5 Cir., 1934, 74 F.2d 120, certiorari denied 294 U.S. 720, 55 S.Ct. 549, 79 L.Ed. 1252, rehearing denied 295 U.S. 767, 55 S.Ct. 643, 79 L.Ed. 1708. The alleged belief is as unsound as a matter of law as it is doubtful as a matter of fact.

The district court heard the testimony. The conflicting statements of appellant's former attorney made while testifying, and his admitted faulty memory as to his knowledge of the statute, might well have discredited his other testimony. It is implicit in the district court's order that it made findings different from those set forth in the Confession of Error. Its decision is justified by the record. It is the exercise of the discretion of the court which we review. We do not find any abuse of discretion. The order overruling the motion is

Affirmed.