WILLIAM PRYOR, Circuit Judge,
dissenting:
Ace Patterson — a child rapist, kidnapper, and burglar — won the habeas lottery
today. The majority gives him a second chance to collaterally attack his convictions in federal court, seventeen years after his trial and nine years after he filed his first federal petition for a writ of habeas corpus. Most state prisoners are not so lucky, as the Antiterrorism and Effective Death Penalty Act prohibits the filing of a “second or successive” petition for a writ of habeas corpus. 28 U.S.C. § 2244(b). But Patterson is luckier still. In a sleight of hand, the majority rules that a 2009 order sparing him from chemical castration — an unopposed order that benefited Patterson — somehow hit the reset button on his ability to obtain federal habeas relief, even though the 2009 order is not “the judgment authorizing [Patterson’s] confinement” and is irrelevant for purposes of the bar on second or successive petitions. Magwood v. Patterson, 561 U.S. 320, 332, 130 S.Ct. 2788, 2797, 177 L.Ed.2d 592 (2010) (emphasis omitted) (quoting Wilkinson v. Dotson, 544 U.S. 74, 83, 125 S.Ct. 1242, 1248, 161 L.Ed.2d 253 (2005)). The clear text of the statute makes “the judgment of a State court” that holds the prisoner “in custody” the judgment that matters for our collateral review. 28 U.S.C. § 2254(b)(1). And for good reason. Patterson, after all, does not object to anything in the 2009 order that spared him from chemical castration or allege that the removal of chemical castration somehow violated his federal constitutional rights. He instead seeks to collaterally attack the judgment of' convictions entered against him in 1998 — a judgment he has already collaterally attacked once in federal court and four times in state court. And the majority lets him do it. Because that ruling is wrong in every way, I dissent.
*897 I. BACKGROUND
The majority provides a barebones accounting of the facts and the procedural history of this appeal. But the nature of Patterson’s crimes, the trauma he caused the victim, and his repeated and often frivolous collateral attacks vividly illustrate why the Antiterrorism and Effective Death Penalty Act bars second or successive petitions. Here’s the rest of the story.
Ace Patterson is a prisoner in the custody of the Secretary of the Florida Department of Corrections. In 1997, he visited his cousin and his cousin’s fiancée at their home in Madison County, Florida. There, Patterson was introduced to the couple’s eight-year-old daughter before she went to bed. Patterson ate dinner and spent time with the couple and then left for the night. But he later returned uninvited.
In the middle of the night, Patterson broke into his cousin’s home, lifted his cousin’s sleeping eight-year-old daughter out of her bed, and carried her outside. Patterson dropped her in a dirty area of the woods and raped her. When she tried to scream, Patterson gagged her by sticking his fingers down her throat. When she tried to escape, Patterson grabbed her leg, dragged her back into the dirt, and raped her again. After the assault, the girl found her way back home. Her parents awoke to the sound of their eight-year-old daughter knocking on the front door — crying, covered in dirt, missing a clump of hair, and covered in scratches and bruises. The medical examiners later discovered dirt in her vagina and severe vaginal lacerations.
In 1998, a jury convicted Patterson of burglary, aggravated kidnapping of a child, and two counts of capital sexual battery. The Florida trial court sentenced him to 311 months imprisonment, consecutive terms of life imprisonment, and chemical castration. The 1998 sentence “committed [Patterson] to the custody of the Department of Corrections” and directed the Department to “keep and safely imprison” Patterson for the remainder of his life. A copy of the 1998 sentence is attached as Appendix A to this dissent. Patterson’s convictions and sentence were affirmed on direct appeal.
Patterson then initiated a flurry of collateral attacks against his convictions, including four petitions for writs of habeas corpus in state court and an ethics complaint against the prosecutor who tried his case. His efforts failed, and a Florida appellate court warned him that “the filing of any further successive and/or frivolous petitions or appeals may result in the imposition of sanctions.” Patterson v. State, 788 So.2d 397 (Fla.Dist.Ct.App.2001) (mem.).
In 2006, Patterson filed his first federal petition for a writ of habeas corpus. He alleged that his convictions were secured in violation of the Due Process Clause of the Fourteenth Amendment, the Self-Incrimination Clause of the Fifth Amendment, and the right to effective assistance of counsel under the Sixth Amendment. The district court dismissed his 2006 petition as untimely. Ordinarily, that decision would have brought closure to the victim of his crimes, who was by then eighteen years old.
Patterson then pursued a different fine of attack. Instead of challenging his convictions, he challenged the portion of his sentence that required chemical castration. Patterson filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on the ground that the trial court did not comply with the statutory prerequisites for chemical castration. The State of Florida and the guardian ad litem for the victim acquiesced in Patterson’s motion. With Patterson im *898 prisoned for life, the prosecutor and guardian ad litem understandably viewed chemical castration as a “moot point” and believed that contesting his motion was not worth “exposing] the victim to the painful remembrance of the Defendant’s actions against her.”
In 2009, the Florida trial court granted Patterson’s motion in an order that stated, “[T]he Defendant shall not have to undergo [chemical castration] as previously ordered by the Court at his sentencing in the above styled matter.” The 2009 order did not vacate Patterson’s original sentence and replace it with a new one. Nor did it direct the Department of Corrections to hold Patterson or to do any affirmative act. A copy of the 2009 order is attached as Appendix B to this dissent.
After his success in state court, Patterson resumed attacking his 1998 convictions in federal court. In 2011, he filed a second petition for a writ of habeas corpus, which again alleged that his convictions were secured in violation of the Fifth, Sixth, and Fourteenth Amendments. The district court dismissed his 2011 petition as second or successive.
II. DISCUSSION
After a state prisoner has had a trial, direct appeal, and an opportunity for collateral review in the state courts, he typically gets one, and only one, chance to collaterally attack his conviction in federal court. With exceptions not relevant here, section 2244(b) prohibits a state prisoner from filing a “second or successive” habeas petition. 28 U.S.C. § 2244(b). This prohibition “is grounded in respect for the finality of criminal judgments.” Calderon v. Thompson, 523 U.S. 538, 558, 118 S.Ct. 1489, 1502, 140 L.Ed.2d 728 (1998). Finality, in turn, is essential to achieving the goals of our criminal justice system: “Deterrence depends upon the expectation that ‘one violating the law will swiftly and certainly become subject to punishment, just punishment.’ Rehabilitation demands that the convicted defendant realize that ‘he is justly subject to sanction, that he stands in need of rehabilitation.’ ” Engle v. Isaac, 456 U.S. 107, 127 n. 32, 102 S.Ct. 1558, 1571 n. 32, 71 L.Ed.2d 783 (1982) (quoting Paul M. Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L.Rev. 441, 452 (1963); Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 146 (1970)). Finality also “benefits the victim by helping [her] put the trauma of the crime and prosecution behind [her].” Presnell v. Kemp, 835 F.2d 1567, 1573 (11th Cir.1988).
Whether a petition is second or successive depends on “the judgment challenged.” Insignares v. Sec’y, Fla. Dep’t of Corr., 755 F.3d 1273, 1278 (11th Cir.2014). The judgment that matters for purposes of section 2244 is “the judgment authorizing the prisoner’s confinement.” Magwood, 561 U.S. at 332, 130 S.Ct. at 2797 (emphasis omitted) (quoting Dotson, 544 U.S. at 83, 125 S.Ct. at 1248); see also Burton v. Stewart, 549 U.S. 147, 156, 127 S.Ct. 793, 798, 166 L.Ed.2d 628 (2007) (explaining that the judgment for purposes of section 2244 is “the judgment pursuant to which [the prisoner] [i]s being detained”); Insignares, 755 F.3d at 1281 (“[T]he judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner’s current detention.” (alteration in original) (emphasis added) (quoting Ferreira v. Sec’y, Dep’t of Corr., 494 F.3d 1286, 1292 (11th Cir.2007))). This conclusion follows from the text of the statute. Section 2244(b) refers to second or1 successive petitions “under section 2254,” 28 U.S.C. § 2244(b), and section 2254 governs petitions that chai- *899 lenge “the judgment of a State court” “pursuant to” which the prisoner is “in custody,” id. § 2254. Accordingly, the bar on second or successive petitions ordinarily prevents a prisoner from twice contesting the judgment authorizing his confinement. See Burton, 549 U.S. at 153, 127 S.Ct. at 796.
A petition is not second or successive if it challenges a “new judgment” issued after the prisoner filed his first petition. Magwood, 561 U.S. at 324, 130 S.Ct. at 2792. But, again, the new judgment must be a new “judgment authorizing the prisoner’s confinement.” Id. at 332, 130 S.Ct. at 2797 (emphasis omitted) (quoting Dotson, 544 U.S. at 83, 125 S.Ct. at 1248). For example, in Magwood, a prisoner filed his first habeas petition, and the district court granted it and vacated his sentence. Id. at 326, 130 S.Ct. at 2793. The state court then conducted a new sentencing hearing and entered a new sentence. Id. When the prisoner filed a second habeas petition, the U.S. Supreme Court held that it was not second or successive because the petition was the prisoner’s “first” challenge to the new sentence. Id. at 339, 130 S.Ct. at 2801. Although the prisoner’s second petition restated the same errors as his first petition, the errors he alleged were “new.” Id. At the resentencing hearing, the state court had heard and rejected the prisoner’s arguments a second time, and “[a]n error made a second time is still a new error.” Id.
Based on the text of the statute and the precedent of the Supreme Court, this case should have been easy. The judgment requiring Patterson’s confinement is the sentence entered in 1998. That judgment “committed [Patterson] to the custody of the Department of Corrections,” and that commitment has never been vacated or replaced. Patterson challenged that judgment in his 2006 petition for a writ of habeas corpus. When the 2006 petition was dismissed as untimely, Patterson lost his one chance to obtain federal habeas relief. See Murray v. Greiner, 394 F.3d 78, 81 (2d Cir.2005) (“[Dismissal of a § 2254 petition for failure to comply with the one-year statute of limitations constitutes an adjudication on the merits that renders future petitions under § 2254 challenging the same conviction ‘second or successive’ petitions under § 2244(b).”). Because Patterson’s 2011 petition tries to challenge the 1998 sentence a second time, it should be dismissed as second or successive.
The majority contends that the 2009 order sparing Patterson from chemical castration is a “new judgment” that renders the 2011 petition not second or successive, Majority Op. at 887, but the majority ignores the plain text of the statute. The presence of an intervening judgment or sentence is irrelevant on its own; a new judgment counts for purposes of section 2244 only if it is a new judgment “pursuant to” which the prisoner is “in custody.” 28 U.S.C. § 2254; see Magwood, 561 U.S. at 332-33, 130 S.Ct. at 2797; Burton, 549 U.S. at 156, 127 S.Ct. at 798; Insignares, 755 F.3d at 1281. And Patterson is not in custody pursuant to the 2009 order. That order does not authorize anything; it instead states, in the negative, that Patterson “shall not have to undergo [chemical castration].” Standing on its own, the 2009 order imposes no sentence and gives the Florida Department of Corrections no authority. The 1998 senténce is the only judgment that allows the Department to detain Patterson. Although the majority asserts that the 2009 order authorizes Patterson’s confinement, Majority Op. at 889-90, the majority never quotes any language from the order that would support such a conclusion.
*900 Because the 2009 order is obviously not the order that authorizes Patterson’s confinement, the majority holds that any order that affects the judgment authorizing a prisoner’s confinement somehow creates a new judgment authorizing his confinement. Id. at 891. Requiring the actual entry of a new judgment, the majority contends, would exalt form over substance. Id. at 890-91. But if “substance” requires departing from the text of the statute and usurping the role of Congress, count me a formalist. To quote Justice Scalia, “Long live formalism. It is what makes a government a government of laws and not of men.” Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 25 (1997).
Indeed, at least two other circuits have embraced the “formalistic” distinction that the majority rejects. The Fifth and Seventh Circuits have held that an order that affects the judgment requiring the prisoner’s confinement, but does not vacate and replace that judgment, does not lift the bar on second or successive petitions. The Fifth Circuit has held that an order partially vacating a sentence is- not a new judgment for purposes of the bar on second or successive petitions. See In re Lampton, 667 F.3d 585, 589-90 (5th Cir.2012). In Lampton, the federal prisoner filed his first motion to vacate, and the district court granted it in part and entered an order “vacating Lampton’s conspiracy conviction and the life sentence that had been imposed based on that conviction.” Id. at 587. This order did not allow Lampton to file a second or successive motion, Judge Higginbotham wrote, because Lampton’s original sentence “remained intact” and the later order did not “impose[ ]” a “new sentence” or “enter an amended judgment.” Id. at 589-90. The majority’s attempt to distinguish Lampton omits the key reasoning of that decision. The point was not that Lampton’s sentence “did not change,” Majority Op. at 892; it was that a partial vacatur is the type of “less fundamental change” that does not allow a prisoner to “bypass AEDPA’s restrictions on piecemeal habeas litigation.” Lampton, 667 F.3d at 590. Even more on point, the Seventh Circuit has held that an order reducing a prisoner’s sentence based on a change in the Sentencing Guidelines, 18 U.S.C. § 3582(c)(2), does not create a new judgment for purposes of the bar on second or successive petitions. See White v. United States, 745 F.3d 834, 836-37 (7th Cir.2014). In White, the federal prisoner’s first motion to vacate was dismissed, but he later filed a successful motion for a sentencing reduction under section 3582(c)(2). Id. at 835. The district court reduced his sentence by 68 months. Id. This reduction was not a new judgment, Judge Easterbrook wrote, because “the original judgment [wa]s not declared invalid.” Id. at 836. Although “White’s sentence ha[d] changed,” the older judgment requiring his confinement was not “vacated” and White was not “resentenced.” Id. (emphasis added). “Magwood does not reset the clock or the count” just because “a prisoner’s sentence is reduced.” Id. at 837. The conflict between these decisions and the majority opinion is plain and makes this appeal a ripe target for the State of Florida to file a petition for a writ of certiorari in the Supreme Court.
Our decision in Insignares does not support the majority. True, both Patterson and Insignares filed successful motions to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a). But the Florida trial court in Insignares went a step further: it also “entered [a] corrected sentence and new judgment.” 755 F.3d at 1277. Specifically, three days after it granted Insignares’s motion, the Florida trial court issued a “Corrected Sentence” that “committed [Insignares] to the custo *901 dy of the Department of Corrections” for a term of twenty-seven years. Here, by contrast, the Florida trial court never issued a corrected sentence to replace Patterson’s 1998 sentence. It simply issued the 2009 order, which bars the imposition of chemical castration but does not supersede the 1998 sentence. In short, Insig-nares had an intervening “judgment authorizing [his] confinement,” but Patterson does not. Id. at 1279 (emphasis omitted) (quoting Magwood, 561 U.S. at 332, 130 S.Ct. at 2797). For the sake of comparison, Insignares’s second judgment is attached as Appendix C to this dissent.
The majority does not view the difference between this case and Insignares as “meaningful,” Majority Op. at 888-89, but the presence of a new judgment authorizing the prisoner’s confinement is the only meaningful difference under the statute. As we reiterated in Insignares, “the existence of a new judgment is dispositive.” 755 F.3d at 1280 (emphasis added) (quoting Magwood, 561 U.S. at 338, 130 S.Ct. at 2800). And the new judgment must be a new “judgment authorizing the prisoner’s confinement.” Id. at 1279 (emphasis omitted) (quoting Magwood, 561 U.S. at 332, 130 S.Ct. at 2797). Contrary to the majority opinion, our decision in Insignares never held — or even suggested — that any order affecting a prisoner’s sentence would necessarily constitute a “new judgment” for purposes of section 2244. Instead, we repeatedly stressed that the Florida trial court had entered a corrected sentence after it granted Insignares’s motion under Rule 3.800(a). See, e.g., id. at 1281 (“The 2009 resentencing by the state judge resulted in a new judgment.” (emphasis added)); id. at 1275 (“Because resentencing by the state judge resulted in a new judgment, ... we conclude Insignares’s petition is not successive.” (emphasis added)).
I fully appreciate that Insignares is the law of this Circuit and binds this panel, whether or not it was correctly decided. Cf. Majority Op. at 893. But “opinions are to be read in the light of the facts of the case under discussion” and “[t]o keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court.” Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). Our decision in Insignares addressed a collateral attack on a new judgment authorizing the prisoner’s confinement. Extending it to a case like this one where no such judgment exists not only misreads Insignares but also conflicts with the plain text of the statute.
Nor is the majority opinion remotely consistent with the purposes of the statute. Cf. Majority Op. at 890-91. In what should raise a massive red flag to any student of the history of habeas law, the majority’s interpretation makes it easier to file a federal habeas petition after the Antiterrorism and Effective Death Penalty Act of 1996 than before that watershed statute was enacted. See generally Gilbert v. United States, 640 F.3d 1293, 1310-11 (11th Cir.2011) (en banc). Before 1996, Patterson’s second petition would be considered an “abuse of the writ” because it raises claims that he could have raised in his first petition. McCleskey v. Zant, 499 U.S. 467, 498, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991). It would be barred unless Patterson could prove either cause and prejudice or a fundamental miscarriage of justice. Id. at 494-95, 111 S.Ct. at 1470. Yet, the majority allows him to file a second petition when he could prove neither exception — a poor interpretation of a statute that was enacted to promote “greater finality of state ... court judgments in criminal cases,” Gonzalez v. Sec’y for Dep’t of Corr., 366 F.3d 1253, 1269 *902 (11th Cir.2004) (en banc), and to impose “new and tighter limits on successive petitions,” Suggs v. United States, 705 F.3d 279, 285 (7th Cir.2013). True, the Antiter-rorism and Effective Death Penalty Act partially modifies the doctrine of abuse of the writ when it defines “second or successive” with respect to “the judgment challenged,” instead of the “claims” raised. Magwood, 561 U.S. at 333-36, 130 S.Ct. at 2797-99. But that textual modification does not apply here because Patterson is raising the same claims and challenging the same judgment. Outside of the modification identified in Magwood, seven Justices have explained that the doctrine of abuse of the writ should continue to guide our interpretation of section 2244(b). See id. at 343, 130 S.Ct. at 2803 (Breyer, J., joined by Stevens and Sotomayor, JJ., concurring in part and concurring in the judgment); id. at 344, 130 S.Ct. at 2803-04 (Kennedy, J., joined by Roberts, C.J., and Ginsburg and Alito, JJ., dissenting). The majority opinion does not heed that instruction.
The majority argues that its opinion somehow promotes finality, federalism, and comity, Majority Op. at 890-91, but that’s a laugher. Leaving aside the fact that the State of Florida argues for the opposite result, the majority opinion will greatly expand the opportunities for federal courts to reopen and reexamine the criminal judgments of state courts. A prisoner will be able to file another petition for a writ of habeas corpus any time a state court issues an order affecting his sentence — for example, an order removing a restitution obligation or a fine, an order reducing a sentence for substantial assistance to the government or based on a reduced sentencing guideline, or an order shortening a term, of probation. The majority’s rule will not only undermine the bar on second or successive petitions in section 2244(b), but it will also undermine the one-year statute of limitations in section 2244(d) because both provisions use the same definition of “judgment.” See Insignares, 755 F.3d at 1281. The corresponding blow to the finality of criminal judgments will be substantial. A prisoner in Florida, for example, can forever hold out hope for another round of federal ha-beas review because Florida allows prisoners to file motions to correct an illegal sentence “at any time.” Fla. R.Crim. P. 3.800(a). This ever-looming specter of federal review will torpedo Florida’s interest in “insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community.” Isaac, 456 U.S. at 127, 102 S.Ct. at 1571 (quoting Sanders v. United States, 373 U.S. 1, 25, 83 S.Ct. 1068, 1082, 10 L.Ed.2d 148 (1963) (Harlan, J., dissenting)). And the increase in federal petitions will burden the state officials who must contest them after the “[pjassage of time, erosion of memory, and dispersion of witnesses.” Id. at 127, 102 S.Ct. at 1572; see also McCleskey, 499 U.S. at 492, 111 S.Ct. at 1469 (“If reexamination of a conviction in the first round of federal habeas stretches resources, examination of new claims raised in a second or subsequent petition spreads them thinner still.”). Far from respecting federalism, the majority will place state prosecutors in a double bind: either contest the prisoner’s motion for a sentencing alteration, draining precious resources and forcing the victim to relive the crime and prosecution; or acquiesce in the prisoner’s motion, triggering another round of federal habeas review and risking the release of the prisoner .due to stale evidence. In short, I frankly do not understand how the majority can contend that its opinion is friendly to the *903 interests of federalism, comity, and finality. With friends like these, the states and victims of crime don’t need enemies.
The majority offers two additional justifications for its opinion, but both are red herrings. First, the majority explains that Florida law does not require trial judges to enter a written sentence. Majority Op. at 890. True, but irrelevant. If the Florida trial court in this case had entered a new judgment authorizing Patterson’s confinement in an oral pronouncement, I would not be dissenting. But the Florida trial court did not enter any new judgment authorizing Patterson’s confinement, orally or otherwise. The majority is knocking down a strawman when it portrays my position as a “paper judgment” requirement. See id. at 890-91, 893-94. Second, the majority contends that focusing on the entry of a new judgment — never mind that the statute requires exactly that focus— would mean that judgments correcting only “clerical” errors would qualify as new judgments. Id. at 890-91. But this argument cannot be taken seriously. We have already held that clerical corrections do not create a new “judgment” for purposes of Federal Rule of Appellate Procedure 4(b)(1)(A). United States v. Portillo, 363 F.3d 1161, 1165-66 (11th Cir.2004). We would surely extend this holding to the context of second or successive petitions under section 2244(b), as we have done already in an unpublished opinion. See United States v. Cano, 558 Fed.Appx. 936, 941 n. 6 (11th Cir.) (“The fact that the district court entered an amended judgment to correct clerical errors does not result in a new judgment that is exempt from the rules on second or successive petitions....”), cert. denied, — U.S. -, 135 S.Ct. 387, 190 L.Ed.2d 273 (2014); accord Marmolejos v. United States, 789 F.3d 66, 71-72 (2d Cir.2015); United States v. Ledesma-Cuesta, 476 Fed.Appx. 412, 412 n. 2 (3d Cir.2012); In re Martin, 398 Fed.Appx. 326, 327 (10th Cir.2010).
The majority opinion is symptomatic of a disturbing phenomenon in the federal judiciary: an open disdain for the Antiterrorism and Effective Death Penalty Act. Recently, three Justices lamented that one of our sister circuits “seems to have acquired a taste for disregarding AEDPA.” Rapelje v. Blackston, — U.S. -, 136 S.Ct. 388, 389, 193 L.Ed.2d 449 (2015) (Scalia, J., joined by Thomas and Alito, JJ., dissenting from the denial of certiorari). A judge from a different circuit recently criticized the Act as “misconceived at its inception and born of misguided political ambition.” Stephen R. Reinhardt, The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court’s Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences, 113 Mich. L.Rev. 1219, 1221 (2015). And another recently labeled it “a cruel, unjust and unnecessary law” that “has resulted ... in much human suffering” and “should be repealed.” Alex Kozinski, Criminal Law 2.0, 44 Geo. L.J. Ann. Rev.Crim. Proc. iii, xlii (2015). But the Antiterrorism and Effective Death Penalty Act is the law of the land and has been for nearly twenty years. The task of rectifying any perceived defects falls to Congress, not unelected judges. “[Fjederal judges must obey” the duly enacted laws of Congress, including the Act, which “some federal judges find too confining.” White v. Woodall, — U.S.-, 134 S.Ct. 1697, 1701, 188 L.Ed.2d 698 (2014). And it is no more legitimate to chip away at the Act by exalting its judicially imagined “substance” over its clear textual “form” than it is to ignore the statute entirely. Cf. Majority Op. at 890-91.
Aside from ignoring the text of the statute and undermining its purposes, the ma *904 jority’s position could provide a pyrrhic victory for its intended beneficiaries. True, after the majority opinion, state prisoners will have greater access to the writ. But once state officials learn that any change to a prisoner’s sentence will trigger another round of federal habeas review, they will be less willing to agree to sentencing alterations that benefit the prisoner. And state courts will be more hesitant to accept their concessions. Judge Haikala’s opinion balks at the notion that a state court would decline to correct a conceded “error,” Concurring Op. at 895-96, but that is not my point. Courts have the discretion to accept a prosecutor’s concession, in lieu of reaching the merits, in close cases and in cases where no error occurred. See Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir.2015); Casey v. United States, 343 U.S. 808, 808, 72 S.Ct. 999, 999, 96 L.Ed. 1317 (1952). But “it has been the sound practice of Florida’s courts to not accept improper concessions by the state” when it “might be to the detriment of the victims of crime and/or to the people of the State of Florida,” Reed v. State, 783 So.2d 1192, 1196 n. 2 (Fla.Dist.Ct.App.2001), quashed on other grounds, 837. So.2d 366 (Fla.2002), a possibility that will arise more often after today’s decision. Judge Haikala’s opinion also predicts that the majority’s decision will benefit defendants because an increase in the opportunities for federal habeas review will decrease the number of constitutional errors made in the state courts. See Concurring Op. at 896-97. But the Supreme Court long ago stated the opposite: “Rather than enhancing [constitutional] safeguards, ready availability of habeas corpus may diminish their sanctity by suggesting to the trial participants that there may be no need to adhere to those safeguards during the trial itself.” Isaac, 456 U.S. at 127, 102 S.Ct. at 1571.
When it comes to federal habeas petitions, the more is not the merrier. Relaxing the bar on second or successive petitions will “prejudice the occasional meritorious application” for a writ of ha-beas corpus by “burfying] [it] in a flood of worthless ones.” McCleskey, 499 U.S. at 492, 111 S.Ct. at 1469 (quoting Brown v. Allen, 344 U.S. 443, 537, 73 S.Ct. 397, 425, 97 L.Ed. 469 (1953) (Jackson, J., concurring in the result)). Despite the best efforts of Congress to prevent that “flood,” the majority is praying for rain.
This case is not hard. And nobody should be fooled by the majority’s atextual decision. After seventeen years of repeated and often frivolous attempts to overturn his convictions, Patterson is being given another go-round based on an order issued in 2009 that both the State of Florida and the guardian ad litem thought was meaningless. That order does not authorize his confinement, and he does not allege that it violates his constitutional rights. Nor should he: the 2009 order gave him all of the relief that he requested. Today’s decision is gimmickry that will require the State of Florida to defend a child rapist’s convictions for the umpteenth time and will threaten a twenty-six-year-old woman to relive the horror of his monstrous crimes.
I dissent.
Appendix A
*905 [[Image here]]
*906 [[Image here]]
*907 [[Image here]]
*908 [[Image here]]
*909 [[Image here]]
*910 [[Image here]]
*911 [[Image here]]
*912 [[Image here]]
*913 [[Image here]]
*914 [[Image here]]
*915 [[Image here]]
*916 [[Image here]]
*917 [[Image here]]
*918 [[Image here]]
Appendix B
*919 [[Image here]]
*920 [[Image here]]
Appendix C
*921 [[Image here]]
*922 [[Image here]]
*923 [[Image here]]