

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-13-00273-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| VANDA VIGIL, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120C10835) |
| | § | |

## **O P I N I O N**

The State appeals the trial court's order granting Vanda Vigil a new trial following her conviction on one count of misdemeanor assault. We reverse.

## BACKGROUND
### *Factual History*

On August 17, 2011, Vigil, her daughter Alexis Gonzalez, and Alexis' then-girlfriend Stephanie Chavez were present at Coconuts Bar in Central El Paso. Elizabeth Jimenez[1], the complaining witness and Alexis' step-sister, testified at trial that she and her cousin Ceci Archuleta came to Coconuts that night to celebrate Archuleta's twentieth birthday. As they entered the bar, Jimenez saw Vigil and Gonzalez. Jimenez stated that Archuleta's boyfriend,

---

[1] Jimenez's name is spelled "Jimenez" and "Jiminez" in the record, because the actual spelling of her name is unclear, we will refer to her as "Jimenez."

who was with the group, commented on the fact that Vigil and Gonzalez seemed to be staring at them. A bartender turned Archuleta away for not having her identification and for not being over age twenty-one, so she, her boyfriend, and Jimenez decided to leave.

As they left the bar, the group passed in front of Vigil, Gonzalez, and Chavez. At this point, the testimony diverges. Jimenez claimed that as she was trying to exit the bar, Vigil and Gonzalez stopped her and attacked, with Vigil pulling Jimenez's hair. Vigil and Chavez disputed Jimenez's account of events. Chavez testified that Jimenez approached Gonzalez and that the two exchanged words. According to Vigil, Jimenez called Gonzalez a "disgusting lesbian." Jimenez and Gonzalez began to fight and fell to the floor. Vigil maintained at trial that she left her chair to try and break up the fight, but that before she could reach Jimenez and Gonzalez, a bouncer arrived and separated the women. Chavez also testified that she did not see Vigil punch or hit Jimenez.

### *Procedural History*

Following trial, the jury found Vigil guilty of assault. The trial court sentenced Vigil to ninety days in jail, suspended the sentence, placed her on probation for ninety days, and credited her with time served. During the course of the sentencing hearing, the trial court remarked:

> I'm in a very difficult situation. If this case would have been tried to me, I believe I would have found you not guilty, ma'am.
> I found your testimony to be somewhat credible. I found the other side to be somewhat credible. I did have reasonable doubt.
> But under our system, a jury makes those determinations. This jury did make that determination. And unless those jury verdicts are set aside, I need to respect and honor those determinations.

Vigil subsequently moved for a new trial on actual innocence, legal insufficiency, and interest of justice grounds. The trial court granted Vigil a new trial. The State appealed.

### DISCUSSION

2

In its sole appellate issue, the State contends that the trial court abused its discretion by ordering a new trial and thereby substituting its judgment for that of the jury when legally sufficient evidence underpinned Vigil's conviction.  Vigil counters that the evidence was legally insufficient to establish her identity as the assailant or any injury to the victim, and, alternatively, that the trial court's new trial order is justified by defects in the indictment.

## I.
### *Confession of Error*

As a threshold matter, Vigil also maintains that the State confessed error during the new trial hearing when the prosecutor commented that she did not personally believe Vigil's guilt could be established by proof beyond a reasonable doubt.  As such, she is entitled to acquittal and the State should be "estopped" from further proceedings.  Vigil bases her claim on the following colloquy between the prosecutor and the trial court:

THE COURT: [...]  Okay. Let me hear from the State.

.        .        .

[PROSECUTOR]: Before this motion for a new trial was filed, even you and I had a conversation. I agree with you. I don't -- if I had been a juror, I would have thought there was reasonable doubt and would have found her not guilty as well.

That said, I think the crux here is that I wasn't a juror. The six who were chosen, after voir dire was conducted, were. And it was their job to weigh the facts, weigh the credibility of the witnesses and determine whether or not they saw reasonable doubt. So I just wanted to say -- I don't know. I just wanted to say that . . . .

THE COURT: Let me ask you a question which will be a difficult question for you, but I think it is a question I need answered.

You are an officer of the court.

[PROSECUTOR]: Right.

THE COURT: Your oath as a district attorney is that you are to seek justice.

[PROSECUTOR]: Right.

3

THE COURT: Not to try to just get every notch under your belt and get every conviction, but to seek justice. So as someone who has taken that oath, what is your position with regard to this Motion?

[PROSECUTOR]: Before -- I think that's actually a simple question. Before every trial, even if I'm second-chairing, I evaluate whether or not there's probable cause to go forward. If there's not, it's easy for me to dismiss. And here I thought there was definitely probable cause. That's why --

THE COURT: No one is doubting your decision to go forward and present the case.

[PROSECUTOR]: Right.

THE COURT: The question I am asking is much more narrow, and it is: Right now, today, with the evidence that was presented and with the Motion that is before the Court, what is your position as someone who tried this case and heard all the evidence with regard to this Motion?

[PROSECUTOR]: I argue that the verdict should stand --

THE COURT: All right.

[PROSECUTOR]: -- because I wasn't a juror, Your Honor.

THE COURT: All right.

We question whether the prosecutor's comment that "if [she] had been a juror, [she] would have thought there was reasonable doubt and would have found her not guilty as well" constituted an actual confession of error. Even if it did, the State's confession of error is not dispositive. We grant great weight to the representations of prosecutors in confessing error, "[b]ut such a confession does not relieve this Court of the performance of the judicial function." *Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002)(citing *Young v. United States*, 315 U.S. 257, 258-59, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1942)). "[O]ur judicial obligations compel us to examine independently the errors confessed" on their merits. *Id*. at 884. Assuming *arguendo* that the comment did constitute confession of error, that alone does not preclude our

4

review of the trial court's decision or automatically entitle Vigil to acquittal by estoppel. To the extent she argues otherwise, we overrule Issue Five. We must still review the alleged error. Bearing these things in mind, we proceed.

## II.
### *New Trial Order*
### New Trials: Standard of Review and Applicable Law

We review the trial court's new trial ruling for abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex.Crim.App. 2007).

A trial judge "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal." *Id.* at 907 [Internal quotation marks omitted]. Instead, even where a defendant urges a new trial on interest of justice grounds, "[a] motion for a new trial, whether for guilt or punishment, requires a valid legal claim." *State v. Thomas*, 428 S.W.3d 99, 107 (Tex.Crim.App. 2014). "To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion." *Herndon,* 215 S.W.3d at 907 (contrasting Texas law with federal appellate precedent).

The trial court must grant the defendant a new trial for any of the reasons articulated in TEX.R.APP.P. 21.3, including "when the verdict is contrary to the law and the evidence." TEX.R.APP.P. 21.3(h). The trial court retains the discretionary power to grant a new trial for any legal reason not listed in TEX.R.APP.P. 21.3. While "[t]he defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial[,] . . . trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon,* 215 S.W.3d at 909. The Court of Criminal Appeals has declined to set bright-line rules for the appellate courts to use in assessing

5

the trial court's exercise of discretion, but the Court has suggested that "a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure." *Herndon*, 215 S.W.3d at 909.

## A.
### Legal Insufficiency

In her first three responses to the State's appeal, Vigil argues we can uphold the new trial grant because the State failed to prove beyond a reasonable doubt that (1) she was actually the person that attacked Jimenez, (2) that Jimenez suffered bodily injury, or (3) that she and not a third party caused any of Jimenez's injuries. We disagree.[2]

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). "Our role on legal sufficiency review is not to usurp the jury and replace its verdict with our own; instead, we serve as a procedural safeguard, ensuring that whatever verdict the jury rendered comports with due process." *Urias v. State*, No. 08–12–00090–CR, 2014 WL 1259397, at *2 (Tex.App.--El Paso Mar. 26, 2014, no

---

[2] We note that Vigil presented an actual innocence claim before the trial court. She does not address it in her brief. As the State correctly points out in its brief, actual innocence claims require new evidence not originally presented to the trial court that would have established innocence at trial. *Ex parte Garcia*, No. 08-11-00232-CR, 2013 WL 1182211, at *5-*6 (Tex.App.--El Paso Mar. 20, 2013, no pet.)(not designated for publication). Since Vigil did not present new evidence in her motion, we considered her actual innocence claims as having merged with her legal sufficiency claim and review the trial evidence under the legal sufficiency standard.

pet.)(not designated for publication). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." [Internal quotation marks omitted]. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). "We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt." *Smallwood v. State*, No. 08-12-00215-CR, 2014 WL 4269155, at *3 (Tex.App.--El Paso Aug. 29, 2014, pet. ref'd)(not designated for publication).

## 1.
### *Identity*

First, we turn to the issue of identity. Vigil argues that the testimony of both State witnesses who identified her as the attacker is legally insufficient to uphold her conviction. Specifically, Vigil maintains that Archuleta never actually saw Vigil touch or hit Jimenez, and that Jimenez's testimony is not credible. We agree with Vigil that, from a direct evidence standpoint, the identity issue ultimately boils down to a he-said, she-said dispute turning on the testimony of a single witness: Jimenez. However, it is well-established that the victim's testimony alone, if believed, is legally sufficient to support a conviction. *See Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970, at *8 (Tex.App.--El Paso Feb. 8, 2012, no pet.)(not designated for publication). Since we no longer possess the power to sit as the "thirteenth juror" and re-weigh the evidence on a factual sufficiency review in a criminal case, *see Isassi*, 330 S.W.3d at 638, and since it would be rational for a jury to conclude Vigil assaulted Jimenez based on Jimenez's testimony, we cannot overturn the jury's implicit finding on the issue of identity for legal insufficiency.

## 2.
### *Bodily Injury*

Second, Vigil contends there is legally insufficient evidence to establish Jimenez suffered

bodily injury. Vigil points out that Jimenez's testimony that her lip and knees bled after the attack is belied by video and photographic evidence in the record.[3] In a video statement given after the fight, Jimenez appears composed and does not show any visible signs of injury to her face. Likewise, pictures of her body, including her legs and knees, fail to show any blood or visible injuries. Even so, visible evidence of physical injury is not necessary to sustain an assault charge. Bodily injury is defined as "*physical pain*, illness, or any impairment of physical condition[,]" [Emphasis added], TEX.PENAL CODE ANN. § 1.07(a)(8)(West Supp. 2014), and can encompass "even relatively minor physical contacts so long as they constitute more than mere offensive touching." [Internal quotation marks omitted]. *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex.App.--Fort Worth 2009, pet. ref'd). Jimenez testified that Vigil hit her head and pulled her hair, and that she felt pain during the attack. This testimony is sufficient to establish that Jimenez suffered bodily injury.

*3.*
*Causation*

Finally, Vigil also maintains that even if identity and bodily injury were proven beyond a reasonable doubt, the State failed to prove that Jimenez's injuries were caused by Vigil and not Alexis Gonzalez. Vigil correctly notes that the State did not charge Vigil under law of the parties, and that as such, Vigil cannot be held criminally liable for injuries caused by Alexis Gonzalez.

Even so, this is not fatal. Jimenez testified that both Vigil and Gonzalez attacked her. Assuming it believed her testimony, a reasonable jury could infer that because Jimenez said both women attacked her, and because she suffered injuries, at least some of the injuries could be attributed to Vigil. This point is without merit.

---

[3] We may review "indisputable" video evidence in the record *de novo*. *State v. Duran*, 396 S.W.3d 563, 570-71 (Tex.Crim.App. 2013).

**B.**
**Indictment Defects**

Finally, Vigil raises two separate complaints about defects in the indictment. First, Vigil complains that the State's prosecuting attorney gave a materially inaccurate reading of the indictment at the trial's inception by alleging she caused Jimenez bodily injury "by pushing or *struggling* Elizabeth Jimenez to the ground" when the criminal information actually alleged that she caused bodily injury "by pushing or *throwing* Elizabeth Jimenez to the ground[.]" Second, Vigil argues that the State spelled Jimenez's surname two different ways in the information— "Jimenez" and "Jiminez"— and that this constitute a fatal variance between the information and what the State proved at trial.

We note, and Vigil concedes, that she did not present either of these grounds to the trial court in her motion for a new trial. However, Vigil maintains we can address these points because they concern errors that touch on waiveable rights. *See Turner v. State*, 860 S.W.2d 147, 150-51 (Tex.App.--Austin 1993, pet. granted), *rev'd on other grounds*, 897 S.W.2d 786 (Tex.Crim.App. 1995). We disagree. In reviewing the new trial grant, "we look to the grounds pleaded by the movant in the motion and determine whether any of these grounds provide a basis for granting the new trial." *State v. Fury*, 186 S.W.3d 67, 73 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd). Because the trial court has no power to order a new trial order *sua sponte*, and because these arguments were never presented to the trial court, they could not form the basis for the new trial grant. *See State v. Varkonyi*, No. 08-06-00262-CR, 2008 WL 821580, at *3 (Tex.App.--El Paso Mar. 27, 2008, pet. dism'd)(not designated for publication). To the extent Vigil is attempting to raise these issues on cross-appeal, we note that a defendant's cross-points are not cognizable on State's appeal. *State v. Barron*, No. 08-12-00245-CR, 2012 WL 5515678 (Tex.App.--El Paso Nov. 14, 2012, no pet.)(mem. op., not designated for publication)(dismissing

9

defendant's cross-appeal where State appealed new trial grant); *cf. Sanchez v. State*, No. 08-11-00137-CR, 2014 WL 2810479 (Tex.App.--El Paso June 20, 2014, pet. ref'd)(not designated for publication)(separately addressing defendant's noticed appeal following disposition of a state's appeal of a new trial grant); *see also State v. Wilkins*, No. 05-12-00154-CR, 2014 WL 465820, at *7 (Tex.App.--Dallas Feb. 4, 2014, pet. ref'd)(not designated for publication)(court of appeals had no jurisdiction to entertain defendant's cross-appeal points on state's appeal, even when defendant properly noticed appeal, because the new trial order the State attacked reversed the final judgment the defendant sought to attack).

In sum, any defects in the indictment could not have formed the basis of the new trial grant because Vigil never presented those grounds to the trial court, and her complaints about the indictment as cross-points are not cognizable at this stage. Further discussion of these issues is unnecessary to the resolution of this appeal. TEX.R.APP.P. 47.1.

## CONCLUSION

Vigil failed to advance any meritorious legal claims in support of her motion for a new trial. As such, the trial court abused its discretion in granting the new trial. Issue One is sustained. We reverse the trial court's order granting the motion for new trial and reinstate the trial court's judgment of conviction.


May 15, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)


10