**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2056
_____

UNITED STATES OF AMERICA

v.

MURRAY ROJAS,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1:15-cr-00169-001)
District Judge:  Honorable Sylvia H. Rambo

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 17, 2020

_____

Before:  CHAGARES, SCIRICA, and ROTH, <u>Circuit</u> <u>Judges</u>.

(Opinion filed: January 11, 2021)
_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Murray Rojas was a licensed horse trainer in Pennsylvania who was convicted by a jury of causing prescription animal drugs to become misbranded in violation of the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 331(k), 353(f), and 333(a), as well as conspiracy to commit misbranding in violation of 18 U.S.C. § 371. She now appeals her conviction and sentence, arguing that the District Court erred in denying her motions for acquittal and in instructing the jury because it failed to distinguish between two terms in the relevant FDCA provisions; abused its discretion in making two evidentiary rulings; and erred in sentencing her for felony rather than misdemeanor misbranding. For the following reasons, we will affirm.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Pennsylvania thoroughbred horse racing regulations include the following rule: "A person acting alone or in concert may not administer or cause to be administered a substance to a horse entered to race . . . within 24 hours prior to the scheduled post time for the first race, except as otherwise provided." 58 Pa. Code § 163.302(a)(2).[1] Racetracks in Pennsylvania have administrative mechanisms and toxicological laboratories for enforcing this rule, and Pennsylvania law provides for criminal sanctions if a person intentionally acts to prevent a publicly exhibited contest — such as a horse

---

[1] Post time is the "[d]esignated time for a horse race to start." Horse Racing Dictionary, Pimlico, https://www.pimlico.com/racing-101/horse-racing-dictionary (last visited July 15, 2020).

2

race — from being conducted according to its rules.  18 Pa. Cons. Stat. § 4109.

Rojas was a state-licensed thoroughbred horse trainer who trained and raced horses at Penn National Race Track ("Penn National") in Grantville, Pennsylvania.  She was charged by a federal grand jury with six counts of wire fraud, one count of conspiracy to commit wire fraud, thirteen counts of felony misbranding of animal drugs, and one count of conspiracy to commit misbranding of animal drugs.  The Government contended that Rojas devised and executed a scheme in which she would administer, or instruct the veterinarians working at Penn National to administer, certain prohibited substances to her horses within twenty-four hours of post time.

Three veterinarians worked at Penn National during the relevant time period.  At trial, all three testified that Rojas routinely instructed them to administer drugs to her horses within twenty-four hours of post time and that Rojas occasionally would administer the drugs herself.  The veterinarians further testified that they hid their conduct by submitting fraudulent documents to the Pennsylvania Racing Commission (the "Commission").  The veterinarians would indicate which drugs they administered and backdate the documents to make it appear that the drugs were administered more than twenty-four hours before post time; or, they would accurately date the document and misrepresent the drugs that they administered.

The Government introduced administrative rulings from Penn National stewards (the "Steward Rulings") for races in which Rojas's horses were disqualified for testing positive for prohibited substances.  Robert Scott Campbell, the Commission's chief steward at the time, testified that the stewards enforce Pennsylvania's horse racing

3

regulations. He detailed the relevant drug testing procedures and explained that the Steward Rulings reflect the Commission's final decisions to disqualify horses for testing positive for prohibited substances. Rojas objected to admission of the Steward Rulings into evidence on hearsay and Confrontation Clause grounds, but the District Court held that the Steward Rulings were admissible under the business records exception to the hearsay rule and that they did not violate Rojas's Confrontation Clause rights because they were non-testimonial.

The District Court precluded Rojas from introducing evidence to show whether the drugs administered to her horses within twenty-four hours of post time were therapeutic versus performance enhancing. It ruled that the distinction was irrelevant to whether Rojas violated 58 Pa. Code § 163.302(a)(2) because that provision bars all drugs within twenty-four hours of post time (subject to narrow exceptions not at issue), regardless of their purpose.

At the close of trial, the District Court instructed the jury that, to find Rojas guilty of felony misbranding, "the Government must prove beyond a reasonable doubt each of the following":

> One, that Ms. Rojas caused prescription animal drugs to be dispensed; two, that the prescription animal drugs were held for sale . . . after they moved in interstate commerce; three, that the prescription animal drugs were misbranded because they were prescription animal drugs that were dispensed without a prescription or other order authorized by law; and four, that Ms. Rojas acted with the intent to defraud and mislead . . . .

Trial Tr. at 1458–59, United States v. Rojas, No. 15-cr-00169 (M.D. Pa. June 26, 2019), ECF No. 202. Rojas objected to the instructions, arguing that the District Court should

4

have instructed the jury on the difference between "administering" drugs and "dispensing" them. She asserted that "[a] drug is 'dispensed' when, based upon a veterinarian's written prescription or oral order, a drug is given for use by the patient" while "a drug is 'administered' . . . when it is applied directly to the patient." Appendix ("App.") 243. The District Court rejected all of Rojas's proposed jury instructions to this effect.

The jury acquitted Rojas on the wire fraud and conspiracy to commit wire fraud counts and convicted Rojas on the misbranding and conspiracy to commit misbranding counts. Through a special interrogatory in the verdict form, the jury also found that Rojas had acted with intent to defraud or mislead.

After the verdict, the District Court denied Rojas's motion for acquittal, in which she had argued that the Government should not "be permitted to substitute the act of administering a drug where a statutory act of misbranding requires proof of dispensing" and that there was no evidence that Rojas "dispensed" animal drugs. App. 221–22. Rojas later filed a renewed motion for judgment of acquittal arguing the same point. The District Court denied that motion as well, and it denied Rojas's subsequent motion for reconsideration.

Rojas objected to the United States Probation Office's Guidelines calculation, arguing that she did not act with the intent to defraud or mislead required for felony misbranding because there was no evidence that she participated in, or agreed to participate in, the veterinarians' false representations to the Commission. Nevertheless, the District Court sentenced Rojas for felony misbranding because the jury found that she

had acted with the requisite intent. Rojas was sentenced to twenty-seven months of imprisonment, two years of supervised release, a $5,000 fine, and a $1,400 special assessment. Rojas timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. §§ 1291 and 3742.

We exercise plenary review over the District Court's denial of Rojas's motions for a judgment of acquittal. See United States v. Starnes, 583 F.3d 196, 206 (3d Cir. 2009). Interpreting the evidence in the light most favorable to the Government, we will uphold the jury's verdict "if there is substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." Id.

We review the District Court's refusal to give specific jury instructions for abuse of discretion, but exercise plenary review over whether the jury instructions correctly stated the law. United States v. Friedman, 658 F.3d 342, 352 (3d Cir. 2011). We review the District Court's evidentiary rulings for abuse of discretion. Id. Finally, with respect to Rojas's sentencing, we exercise plenary review over the District Court's interpretation of the relevant statutory provision and review factual findings for clear error. See United States v. Weaver, 267 F.3d 231, 235 (3d Cir. 2001).

## III.

Rojas makes five arguments on appeal: (i) the District Court failed to instruct the jury properly on the distinction between the terms "administer" and "dispense," as used in the FDCA; (ii) the Government presented insufficient evidence to support her

6

misbranding convictions because it established only that she administered animal drugs or caused them to be administered rather than dispensed; (iii) the District Court erred in allowing the Steward Rulings into evidence; (iv) the District Court erred in excluding evidence that the drugs given to the horses were for therapeutic purposes; and (v) the District Court erred in sentencing her for felony rather than misdemeanor misbranding.

A.

Rojas first argues that the terms "administer" and "dispense" have distinct meanings in the FDCA misbranding provisions, and, as a result, the District Court erred in refusing to instruct the jury that the terms have different meanings and that proof that she "administered" animal drugs does not prove that she "dispensed" them. Rojas claims that "administer" means giving a remedy to a patient whereas "dispense" means giving a medicine to another person for that person to administer. Rojas Br. 20–29 & n.10 (citing e.g., Administer, Webster's Third New Int'l Dictionary 27 (2002) ("to give remedially"); App. 165 (testimony from a Penn National veterinarian that "administer" and "dispense" have different meanings); Pennsylvania Rules of Professional Conduct for Veterinarians, 49 Pa. Code § 31.21). Rojas also emphasizes that other provisions of the FDCA use the terms in different contexts within the same section, implying that Congress intended them to have different meanings. See, e.g., 21 U.S.C. § 353(b). Finally, Rojas points to Young v. United States, in which the Supreme Court held that "Congress, by the use of the words 'dispensing physicians[,]' meant to exclude physicians administering to patients whom they personally attend." 315 U.S. 257, 259 (1942).

The Government responds that Rojas's interpretation of "dispense" is inconsistent

7

with the term's ordinary meaning, citing various dictionary definitions defining "dispense using terms that are synonymous with 'administer.'" Gov. Br. 26–27. It argues that when the veterinarians injected Rojas's horses they "both dispense[ed] and administer[ed] the drugs themselves." Gov. Br. 32 (quoting United States v. Rojas, No. 1:15-cr-00169, 2019 WL 2172814, at *3 (M.D. Pa. May 20, 2019)). The Government asserts that Rojas's proposed interpretation would gut the lawful order or prescription requirement and contravene the purpose of the FDCA by placing veterinarians who personally administer drugs beyond its reach. Finally, it dismisses Young as "immaterial" because it involved a now-repealed internal revenue law and distinguished "administer" and "dispense" in the context of physician record-keeping. Gov. Br. 36.

We are unconvinced that Congress intended the term "dispense" to exclude situations in which a veterinarian personally administers a drug. The FDCA bars the "doing of any . . . act with respect to[] a . . . drug . . . if such act . . . results in such [drug] being adulterated or misbranded." 21 U.S.C. § 331(k). And it provides that "dispensing a drug" without a lawful prescription or order is "an act which results in the drug being misbranded." Id. § 353(f)(1)(A)–(C). Because the FDCA does not define the word "dispense," "we construe it in accordance with its ordinary meaning." United States v. Husmann, 765 F.3d 169, 173 (3d Cir. 2014) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 553 (2014)). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute." Id. (quoting Dolan v. U.S. Postal Serv., 546 U.S. 481, 486 (2006)).

The terms "administer" and "dispense" have both distinct and overlapping

8

ordinary meanings; some dictionaries equate the terms, while others ascribe them distinct definitions. Compare Administer, Black's Law Dictionary (11th ed. 2019) ("To give (medicine or medical treatment) to someone.") and Dispense, Oxford English Dictionary, https://www.oed.com/ (last visited Apr. 22, 2020) ("To mete out, deal out, distribute"; "to administer"), with Dispense, Stedman's Medical Dictionary 571 (28th ed. 2006) (updated Nov. 2014) ("To give out medicine . . . ; to fill a medical prescription."). So resort to dictionaries is not helpful.

But the FDCA was "designed primarily to protect the health and safety of the public." POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 108 (2014). As such, § 331(k) has been interpreted broadly to apply to every applicable article that has gone through interstate commerce. See United States v. Goldberg, 538 F.3d 280, 288–89 (3d Cir. 2008), as amended (Nov. 6, 2008). The "statute is remedial and should be liberally construed so as to carry out its beneficent purposes." De Freese v. United States, 270 F.2d 730, 735 (5th Cir. 1959) (quotation marks omitted).

Rojas's interpretation of § 331(k) and § 353(f)(1) would contravene this broad remedial purpose. If the word "dispensed" in § 353(f)(1) does not encompass instances where veterinarians personally administer prescription drugs, they could circumvent the lawful order or prescription requirement simply by administering drugs themselves. But, if veterinarians sold or gave the same drug to a lay person who then administered it, that person's conduct would constitute misbranding. We are not convinced that Congress intended to create such a broad exemption to misbranding by using the term "dispense" instead of "administer" in § 353(f). The Supreme Court's decision in Young does not

9

convince us otherwise — that case addressed an old internal revenue law with no connection to the FDCA other than its use of the terms "administer" and "dispense." See 315 U.S. at 259–60.

Given this interpretation of the term "dispense," and because the District Court's instructions to the jury closely tracked the relevant language of the FDCA, we discern no error in the District Court's recitation of the law or its refusal to give the specific instructions that Rojas requested. See United States v. Williams, 299 F.3d 250, 258 (3d Cir. 2002).

B.

Based on the same purported distinction between "administer" and "dispense," Rojas contends that there was insufficient evidence to convict her of misbranding because the Government did not present any evidence that she dispensed prescription animal drugs. Applying our interpretation of the term "dispense" and "interpret[ing] the evidence in the light most favorable to the Government," it is clear that "there is substantial evidence from which a rational trier of fact could find" that Rojas committed misbranding. Starnes, 583 F.3d at 206 (quotation marks omitted). The Government presented considerable evidence at trial that the Penn National veterinarians administered prohibited drugs to Rojas's horses within twenty-fours of post time at Rojas's direction. It also presented evidence that Rojas herself administered prohibited drugs to her horses within twenty-four hours of post time. Based on that evidence, Rojas dispensed animal drugs and caused animal drugs to be dispensed without a lawful order, each instance of which qualifies as "an act which results in [a] drug being misbranded." 21 U.S.C.

10

§ 353(f)(1)(C).

C.

Rojas next argues that the District Court erred in allowing the Government to introduce the Steward Rulings because they are hearsay. She also argues that the District Court's precluding her from cross-examining a witness about the Steward Rulings violated her rights under the Confrontation Clause.

We disagree. "Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status," as long as the regularly conducted activity is not "the production of evidence for use at trial." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 321 (2009); see also Fed. R. Evid. 803(6). To be subject to the Confrontation Clause, a hearsay statement must be "testimonial," meaning that it is a "declaration or affirmation made for the purpose of establishing or proving some fact" and "made primarily for the purpose of prov[ing] past events potentially relevant to later criminal prosecution." United States v. Gonzalez, 905 F.3d 165, 201 (3d Cir. 2018) (alteration in original) (quoting United States v. Stimler, 864 F.3d 253, 272 (3d Cir. 2017)).

Campbell's testimony established that the Steward Rulings met the criteria for the business records exception to the hearsay rule. Campbell testified that he had been a steward for fifteen and a half years, including three years as chief steward, and he explained the purposes of the Steward Rulings as well as how and why they are created and kept. This evidence established that the Steward Rulings are prepared to enforce Pennsylvania's horse racing rules, not to produce evidence for use in litigation. See

11

Gonzalez, 905 F.3d at 201.  As a result, the District Court did not abuse its discretion in admitting the Steward Rulings into evidence, and their admission did not violate Rojas's rights under the Confrontation Clause.

D.

Next, Rojas argues that the District Court should not have precluded her expert witness from testifying about whether the drugs administered were therapeutic versus performance enhancing.  She contends that the Government's felony misbranding charge hinged on proving that she participated in a fraud designed to win horse races and prize money.  Therefore, she argued that evidence that the drugs were not performance enhancing is relevant to whether she perpetrated such a fraud.

We disagree.  Pennsylvania's horse racing regulations prohibit administering drugs to horses within twenty-four hours of post time and, except for a narrow exception not at issue, the regulations do not distinguish between therapeutic and performance-enhancing drugs.  See 58 Pa. Code § 163.302–304.  Any evidence that Rojas sought to introduce to draw such a distinction is therefore irrelevant.  Fed. R. Evid. 401.  Further, the probative value of testimony on the nature of the drugs would have been substantially outweighed by the risks of "confusing the issues" and "misleading the jury" regarding whether the Rojas violated 58 Pa. Code § 163.302.[2]  See Fed. R. Evid. 403.  The District Court did not abuse its discretion in precluding Rojas from presenting this evidence.

---

[2]  The Government objected to this testimony on the grounds that it was irrelevant under Rule 401 and risked confusing the issues under Rule 403.  The District Court's ruling was based only on Rule 401.

12

E.

Finally, Rojas argues that the District Court should not have sentenced her for felony misbranding because the Government did not present evidence that she engaged in any fraud or attempted to cover up her activities. She alleges that the evidence shows that only the veterinarians were involved in falsifying documents to the Commission. For support, she cites United States v. Goldberg, in which we vacated a defendant's felony misbranding convictions because he "conducted his admittedly illegal ventures in the open." 538 F.3d 280, 290 (3d Cir. 2008).

Again, we disagree. Felony misbranding requires the Government to prove "intent to defraud or mislead." Id. at 289 (quoting 12 U.S.C. § 333(a)(2)). There was evidence presented at trial tending to show that Rojas knew of the falsified reports, instructed the veterinarians to inject substances within twenty-four hours of post time, thus necessitating the falsified reports, knew that administering drugs on race day violated Pennsylvania regulations, and knowingly participated in the entire venture. The veterinarians testified that they willingly participated in the scheme and understood that it was illegal. And the jury returned a special interrogatory in the verdict form finding that Rojas acted with the requisite intent to defraud or mislead. We see no error in the District Court's sentencing Rojas for felony misbranding.[3]

---

[3] We have considered the other arguments made by Rojas and determined that they are without merit.

13

IV.

For these reasons, we will affirm the District Court's judgment of conviction and sentence.