J-S24011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW C DILLIPLANE | : | |
| | : | |
| Appellant | : | No. 1672 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 31, 2022
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CP-49-CR-0000043-2020

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 25, 2023**

Matthew C Dilliplane, Appellant, appeals from the judgment of sentence imposed following his bench trial convictions for, *inter alia*, possession with intent to deliver. Appellant challenges the trial court's denial of his motion to suppress evidence recovered after a patdown frisk. **See Terry v. Ohio,** 392 U.S. 1 (1968) (discussing the standards applicable to a "stop-and-frisk" as a warrantless seizure and search). The Commonwealth concedes that Appellant is entitled to relief. We agree, as the suppression testimony does not support the court's conclusion that the Commonwealth met its burden of establishing "that the challenged evidence was not obtained in violation of" Appellant's rights. Pa.R.Crim.P. 581. We therefore vacate Appellant's judgment of sentence and remand for further proceedings.

---

[*] Former Justice specially assigned to the Superior Court.

At the outset, we do not view the Commonwealth's confession of error as dispositive, especially where its reasons for doing so are unexplained. "Confessions of error are, of course, entitled to and given great weight, but they do not 'relieve this Court of the performance of the judicial function.'" *Sibron v. New York*, 392 U.S. 40, 58 (1968) (quoting *Young v. United States*, 315 U.S. 257, 258 (1942)). *See also Commonwealth v. Perrin*, 291 A.3d 337, 346 (Pa. 2023) (holding that trial court was not obligated to accept stipulation to witness credibility in PCRA hearing); *Commonwealth v. Brown*, 196 A.3d 130, 143 (Pa. 2018) (declining to vacate death sentence in collateral proceeding where Commonwealth confessed error; "After the jury … recommend[ed] a death sentence, the district attorney lost any prosecutorial discretion to alter that verdict.  If the law were otherwise, district attorneys would have the powers of courts, while courts would be reduced to mere rubber stamps….").  Unlike *Brown*, this case does not involve a jury verdict nor does it involve the Commonwealth's seeking a "different result based upon the differing views of the current office holder with respect to the prior exercise of prosecutorial discretion." *Brown*, 196 A.3d at 149.  It involves a conclusion that Appellant was entitled to suppression, presumably due to a reevaluation of the applicable law.  However, those distinctions matter less than the principle that the Commonwealth cannot bind a court to its interpretation of the law. *Id.* at 143 ("[I]f the 'power' of a court amounts to nothing more than the power 'to do exactly what the parties tell it to do, simply because they

said so and without any actual merits review, it is not judicial power at all.'") (quoting Attorney General's brief).

We therefore turn to whether we agree with the Commonwealth's concession. The suppression hearing transcript reveals the following. Members of the Northumberland County Adult Probation and Parole Department wished to speak with Tia Marie Zacek due to her failing a urine screening the previous day. Agent Matthew Narcavage and several other probation officers visited her apartment. Upon entry, he saw Zacek in the living room speaking to her probation officer, Casey Fisher. Appellant was seated at a kitchen table. Zacek's son, estimated to be about eighteen years old, was in the back bedroom.

Agent Narcavage proceeded to Zacek's bedroom and discovered "a bag that had what appeared to be drugs and drug paraphernalia inside of it and that was all in plain view." N.T. Suppression, 5/14/20, at 9. Due to this discovery, he requested the presence of City of Shamokin police. The probation agents then asked Zacek if there was anything else in the home to be concerned with, and she replied that there were pellet guns inside a bag, which was underneath a blanket. She pointed out the bag and a third agent, Dylan Tamecki, retrieved the weapons. At that point, Agent Tamecki called Agent Narcavage over and showed him the guns, which "appeared to be realistic." *Id.* at 10. The weapons turned out to be Airsoft pistols. Agent Narcavage then "told everybody for officer safety ... 'I'm going to need to pat you down. We need to make sure there's no weapons on anybody.'" *Id.*

- 3 -

At some point during the above, Appellant had been asked to sit on the living room's sofa. Agent Narcavagae then "asked [Appellant] to come out. He was kind of between where there was a coffee table and a sofa. I asked him to keep his hands up." *Id.* at 11. Appellant was wearing a hooded sweatshirt and "in the front center[,] in the crotch area[,] there was actually a bulge." *Id.* Agent Narcavage then initiated a patdown and discovered that "there was … something underneath his sweatshirt," so Agent Narcavage "raised up his sweatshirt" and "found a bag that was actually stuffed down into his waistband area in the front crotch region." *Id.* The bag was passed to another officer, who took the bag and Appellant back to the kitchen. Police Officer Bryan Primerano arrived sometime thereafter and he "made the decision to open the bag" because it was "large enough to hold a gun, a knife, a weapon, a syringe, anything [of] that nature." *Id.* at 27. Inside this bag were three more bags, which Officer Primerano opened. He discovered "a plastic bag containing methamphetamine." *Id.* at 28.

Appellant's motion to suppress the evidence was denied, and he proceeded to a bench trial. Appellant was convicted of possession with intent to deliver, possession of controlled substances, and possession of drug paraphernalia, and sentenced to an aggregate period of 6 to 12 months of incarceration. Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal. Appellant now raises a challenge to the trial court's failure to grant suppression.

Appellant presents a series of arguments, beginning with an assertion that probation officers do not have statutory authority to search anyone not supervised by their office. Appellant recognizes that our Supreme Court held in *Commonwealth v. Mathis*, 173 A.3d 699, 711 (Pa. 2017), that parole agents, while lacking statutory authority, possess "ancillary authority" to frisk non-parolees "so long as reasonable suspicion supports the agents' conduct." Appellant submits that *Mathis* should not be extended to the probation officer context. Appellant also argues that there was no reasonable suspicion to frisk, no basis to remove the item from Appellant's person, and, finally, that even if the bag was lawfully removed, any threat to officer safety did not exist after the bag was placed in the kitchen. We agree that there was no reasonable suspicion to frisk Appellant, obviating the need to address the lawfulness of the subsequent actions.

We will accept without deciding that *Mathis* extends to probation officers, as the same principles animating the result there would seem to apply equally in this domain. *See generally id.* at 710 (recognizing that "innate to these common law and statutory authorizations is the power to undertake constitutionally permissive actions that may preempt resort to the use of deadly force") (citation omitted). This principle has a key limitation, however: the authority to perform a pat down is tethered to the aforementioned "constitutionally permissive actions," *id.*, which in this context is the authorization to perform a *Terry* frisk for weapons. "It is reasonable under the Fourth Amendment for the brief stop to also include a frisk of the suspect's

outer clothing where the police officer has reason to believe the suspect is 'armed and dangerous.'" *Interest of T.W.*, 261 A.3d 409, 417 (Pa. 2021) (quoting *Terry*, *supra* at 15).

Turning to reasonable suspicion to frisk Appellant, we note that the United States Supreme Court has held that authorities may not frisk individuals based on their mere presence during the execution of a search warrant for narcotics. In *Ybarra v. Illinois*, 444 U.S. 85, 87 (1979), the search warrant application did not establish probable cause "to believe that any person found on the premises of the Aurora Tap Tavern, aside from 'Greg,' would be violating the law." *Id.* at 90. The application stated that "Greg" was a bartender and known to deal drugs, and an informant advised police that "Greg" would have drugs for sale on a particular day. When authorities executed the warrant on that date, they "announced their purpose and advised all those present that they were going to conduct a 'cursory search for weapons.'" *Id.* An officer then patted down Ybarra, who was one of several patrons who happened to be in the bar at that time. An officer recovered drugs and Ybarra was ultimately convicted. The High Court reversed. As the Court explained, the facts did not establish that Ybarra was anything other than an innocent bystander.

> Upon entering the tavern, the police did not recognize Ybarra and had no reason to believe that he had committed, was committing, or was about to commit any offense under state or federal law. Ybarra made no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to the police officers. In short, the agents knew nothing in particular about Ybarra, except

that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale.

*Id.* at 90–91.

It was clear that the government could not offer any facts to establish that the officers reasonably suspected that Ybarra posed a threat to justify a patdown. "The initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapon." *Id.* at 92-93. The most that the testifying officer could offer "was that Ybarra was wearing a ¾-length lumber jacket…. In short, the State is unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." *Id.* at 93. The exception to the warrant requirement allowing a patdown search "does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Id.* at 94.

In the absence of the Commonwealth's advocacy, the only support we can find for the patdown search is an assumption, similar to the *per se* rule rejected by **Ybarra**, that the mere presence of an individual during a probation search justifies a frisk of all persons onsite due to officer safety concerns once a weapon is found in a probationer's residence. However, **Ybarra** required an individualized suspicion to justify a search of Ybarra. We acknowledge that **Ybarra** involved a search warrant for narcotics, whereas here the triggering

event was the discovery of what officers believed to be genuine firearms based on their appearance (which turned out to be Airsoft pistols). Simultaneously, this is not a case where officers were serving a search warrant for an individual known to be armed and dangerous. *Cf. Muehler v. Mena,* 544 U.S. 93 (2005) (holding that it was reasonable under the Fourth Amendment to detain resident of home who was not target of search warrant at gunpoint and then handcuff for over two hours while search is executed; "The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises."). In short, the reasonable inference that a third party may be "armed and dangerous" per *Terry* may well turn on circumstances such as why the probation officers were visiting the home. We do not minimize officer safety concerns when dealing with a third party who happens to be in a place where the probation agents were lawfully authorized to be. But neither may we minimize the privacy interests of that third party. "[A] finding in a case that an officer's warrantless search was not justified by an exigency does not reflect hostility to his or her actions. It means only that our constitution places greater emphasis on the violations of privacy occasioned by an unreasonable search." *Commonwealth v. Alexander*, 243 A.3d 177, 204 (Pa. 2020).

On this record, the Commonwealth established only that Zacek, the sole person over whom the probation agents had any statutory authority, had what appeared to be firearms in her bedroom. It is clear from the testimony that

this fact, standing alone, triggered the decision to search the remaining occupants, as upon seeing the Airsoft weapons Agent Narcavage announced that all occupants would be subjected to a frisk. There was nothing specific about Appellant's behavior that led to the search. Nor, on this record, do we conclude that the circumstances leading to the agents' presence inside Zacek's apartment justified an inference that Appellant was armed and dangerous. The testimony at the suppression hearing states that the visit was prompted due to Zacek failing a drug screening, and they "informed her that we were going to be coming out to her address[.]" *Id.* at 6.

Because the patdown search rested on a generalized assertion of fear and was not based on any type of individualized suspicion, the *Terry* frisk was invalid. *See Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) (stating that "an officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch of criminal activity'") (internal quotation marks omitted). Agent Narcavage did not even articulate a hunch. He apparently believed that a search was automatically justified once a weapon was recovered from Zacek's bedroom. Accordingly, we agree with the Commonwealth's concession that all evidence must be suppressed as fruit of the poisonous tree.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/25/2023