# Order

**Michigan Supreme Court**
**Lansing, Michigan**

February 26, 2021

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

160436

PEOPLE OF THE STATE OF MICHIGAN,
         Plaintiff-Appellee,

v                                                          SC:  160436
                                                           COA:  346775
                                                           Oakland CC:  2017-265355-FJ
MUHAMMAD ALTANTAWI,
         Defendant-Appellant.

_____/

On April 21, 2020, the Court ordered oral argument on the application for leave to appeal the September 5, 2019 judgment of the Court of Appeals.  On order of the Court, the application is again considered.  Pursuant to MCR 7.305(H)(1) and in light of the prosecutor's concession that the juvenile defendant was subjected to a "custodial interrogation" without being advised of his rights pursuant to *Miranda v Arizona*, 384 US 436, 444 (1966), we VACATE our order dated April 21, 2020.  In lieu of granting leave to appeal, we VACATE Part III.B. of the judgment of the Court of Appeals addressing the *Miranda* issue, and we VACATE that part of the November 20, 2018 order of the Oakland Circuit Court that denied the defendant's motion to suppress his statements to the police.  In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court.

We do not retain jurisdiction.

VIVIANO, J. (*dissenting*).

The Court's order today vacates the lower court judgments simply "in light of the prosecutor's concession" that defendant was in custody for the purposes of *Miranda v Arizona*, 384 US 436, 444 (1966).  As a result of the concession, the prosecutor submits that the statements defendant made during his interrogation without being advised of his *Miranda* warnings should not be used against him at trial.  However, the order does not purport to determine whether that the concession is legally correct and, instead, it simply wipes the proverbial slate clean for future proceedings.  I write to explain why I believe that, in resolving the case in this manner, the Court has relinquished its responsibility to independently evaluate and adjudicate this case in light of the alleged error now raised on appeal.  And it has chosen a poor vehicle for doing so, as I do not believe that there was any plausible error below.  Instead, I would request supplemental briefing on whether the case has become moot and whether the lower court judgments should be vacated.

As the United States Supreme Court has noted, a prosecutor's confession of error "does not relieve this Court of the performance of the judicial function," and while the opinion of the prosecutor is entitled to some weight, "our judicial obligations compel us to examine independently the errors confessed." *Young v United States*, 315 US 257, 258-259 (1942). The public interest in the "proper administration of the criminal law cannot be left merely to the stipulation of parties." *Id*. at 259. See also *Sibron v New York*, 392 US 40, 58 (1968) ("Confessions of error are, of course, entitled to and given great weight, but they do not relieve this Court of the performance of the judicial function. It is the uniform practice of this Court to conduct its own examination of the record in all cases where the Federal Government or a State confesses that a conviction has been erroneously obtained.") (quotation marks and citation omitted).

Nonetheless, the Supreme Court has engaged in a "now well entrenched" practice of summarily disposing of such cases by what is known as a "GVR": the Court grants certiorari, vacates the lower court judgment, and remands. *Lawrence v Chater*, 516 US 163, 183 (1996) (Scalia, J., dissenting). The Court has asserted the authority to order such relief under 28 USC 2106, which "appears" to give the Supreme Court the "broad power" to vacate and remand any judgment for further proceedings. *Lawrence*, 516 US at 166 (opinion of the Court).[1] A GVR does not require a finding that error occurred and therefore does not create any precedent. See *id*. at 171 (recognizing the established practice of GVRing a case "without determining the merits"); *Casey v United States*, 343 US 808, 808 (1952) ("To accept in this case [the Solicitor General's] confession of error would not involve the establishment of any precedent."). But, to reconcile these orders with the obligation to independently consider the legal issue, the Supreme Court accepts only legally "plausible confessions of error . . . ." *Lawrence*, 516 US at 171.

Justice Scalia and other members of the Supreme Court have criticized the GVR process. See *Nunez v United States*, 554 US 911, 912 (2008) (Scalia, J., joined by Roberts, C.J., and Thomas, J., dissenting) ("In my view we have no power to set aside (vacate) another court's judgment unless we find it to be in error."). They contend that the "facially unlimited statutory text" of 28 USC 2106 remains "subject to the implicit limitations imposed by traditional practice and by the nature of the appellate system created by the Constitution and laws of the United States." *Lawrence*, 516 US at 178 (Scalia, J., joined by Thomas, J., dissenting). The lower courts, "staffed by judges whose

---

[1] 28 USC 2106 states in full:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

manner of appointment and tenure of office are the same as our own," are "not the creatures and agents of this body," unlike "masters, whose work we may reject and send back for redoing at our own pleasure." *Id*. at 178-179. Moreover, according to this line of thought, the routine acceptance of confessions fits poorly within our adversary system, can smack of gamesmanship, and provides dubious value in determining the existence of legal errors in complicated areas of law.[2]

I agree with this critique and find it applicable to confessions made in our Court.[3] MCR 7.305(H)(1) provides that the Court may "grant or deny the application for leave to appeal, enter a final decision, direct argument on the application, or issue a peremptory order." As with 28 USC 2106, this court rule is subject to the implicit limitations of the appellate system created by our Constitution. As in the federal court system, judges across Michigan's judiciary are appointed and elected in the same manner as justices of this Court. Compare Const 1963, art 6, §§ 2, 8, 12, 16, and 23. More generally, we have forcefully rejected the notion that the parties' stipulations of law bind the Court, as this result would be contrary to the judicial obligation "to determine the applicable law in each case." *In re Finlay Estate*, 430 Mich 590, 595 (1988). I believe that this obligation flows to cases involving confessions of error—automatic acceptance of confessions would be tantamount to allowing the parties to stipulate the law, even if the resolution does not create binding precedent going forward. For these reasons, I believe that our Court also has the duty to "examine independently the errors confessed" and make a determination on the merits of an error in order to avoid leaving the "proper administration of the criminal law . . . to the stipulation of parties." *Young*, 315 US at 258-259.

---

[2] See *Mariscal v United States*, 449 US 405, 407 (1981) (Rehnquist, J., dissenting) ("I harbor serious doubt that our adversary system of justice is well served by this Court's practice of routinely vacating judgments which the Solicitor General questions without any independent examination of the merits on our own."); *Hicks v United States*, 582 US ___, ___; 137 S Ct 2000, 2001 (2017) (Gorsuch, J., concurring) (noting agreement with "much in Justice Scalia's dissent" in *Nunez*, including the admonishment against GVRing a case when "we cannot with ease determine the existence of an error of federal law" or when the "confession bears the marks of gamesmanship").

[3] Although our experience with confessions of error is not extensive, we have similarly reversed, vacated, and remanded while professing to avoid the merits and thereby prevent the establishment of precedent. See *People v Foster*, 377 Mich 233, 235 (1966) (reversing and remanding without comment on the merits in response to confession); *People v Miles*, 376 Mich 165, 166 (1965) ("I would purposely refrain from determining the merit of defendant's presented claim of error, there being no need for such determination considering the prosecutor's confession.").

In the present case, I respectfully submit that the majority has abdicated this responsibility by simply vacating the lower court judgments and remanding without any analysis of the legal issue at stake. The Court's action falls short of even the GVR standard, as there is no pretense that the confession is plausible. I would not undo the judgment of the Court of Appeals without either resolving the merits or explaining why some other applicable legal principle (such as mootness) requires vacatur.

Even if I were inclined to acquiesce in this general GVR practice, I would refrain from it here because I am not convinced there was any plausible error in the Court of Appeals' judgment that defendant was not in custody.[4] See *Lawrence*, 516 US at 171 (requiring the error to be plausible in order to GVR). To determine whether a defendant was in custody at the time of an interview, the Court must determine whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave" and then whether "the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v Fields*, 565 US 499, 509 (2012) (quotation marks and citation omitted; alteration in original). In making this assessment, the court must examine "all of the circumstances surrounding the interrogation." *Id*. (quotation marks and citation omitted). Relevant factors include "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id*. (citations omitted). If the defendant is a juvenile, the child's age is also a relevant factor in the custody analysis. *JDB v North Carolina*, 564 US 261, 271-272 (2011).

For the reasons stated by the Court of Appeals' majority, nearly all the non-age-related factors favor a finding that a reasonable person in defendant's position would have felt free to leave the interview. The interview took place in an open, familiar location in defendant's home—the dining room table.[5] The interview did not last long,

---

[4] Notwithstanding his criticism, Justice Scalia did eventually acquiesce to this practice given its well-entrenched nature. See *Lawrence*, 516 US at 191-192 (Scalia, J., dissenting); see also *Nunez*, 554 US at 911 (Scalia, J., dissenting) (recognizing that, even though he did not believe the Court had the authority to vacate a judgment absent a finding of error, "I have reluctantly acquiesced in our dubious yet well-entrenched habit of entering a GVR order *without an independent examination of the merits* when the Government, as respondent, confesses error in the judgment below").

[5] See *Beckwith v United States*, 425 US 341, 342, 347 (1976) (recognizing that an interview in a private home weighs against a finding of custody); *United States v Faux*, 828 F3d 130, 138 (CA 2, 2016) (concluding that the defendant was not in custody because she was "questioned in the familiar surroundings of her home" and was "seated at her own dining room table").

only 38 minutes.[6] While the officers did not tell defendant that he was free to leave, they did ask permission from defendant's father to interview defendant.[7] They also did not threaten defendant but generally talked in a conversational tone and implored him to tell the truth.[8] Defendant was not physically restrained in any way, and he was released after questioning.[9] Finally, in considering defendant's age, it is true that defendant was a 16-year-old minor at the time of questioning. However, defendant was close to the age of majority at the time of the interview and, like other courts that are less willing to give substantial weight to this factor the closer a defendant is to 18, I would also decline to conclude that his age weighs so strongly in favor of a finding of custody as to outweigh all the other factors.[10] The Court of Appeals majority could have more thoroughly

---

[6] Compare *Oregon v Mathiason*, 429 US 492, 495 (1977) (holding that a 30-minute interview was noncustodial), with *Yarborough v Alvarado*, 541 US 652, 665 (2004) (noting that a two-hour interview would weigh in favor of a finding of custody).

[7] See *California v Beheler*, 463 US 1121, 1122, 1125 (1983) (noting that when a defendant "agree[s] to talk to police," even at the station house, that weighs against custody); *United States v Lowen*, 647 F3d 863, 868 (CA 8, 2011) (holding that an interview in a defendant's home, where the suspect consented to the interview and the police told him that his "vehicle and physical description matched that" of the prime suspect, was noncustodial).

[8] See *Yarborough*, 541 US at 664 (noting that an officer's appeal to a defendant's "interest in telling the truth" without making threats weighs against a finding of custody); *Beckwith*, 425 US at 343, 348 (concluding that an interview described as a "conversation" that was "friendly" and "relaxed" was "free of coercion") (quotation marks and citation omitted).

[9] See *Yarborough*, 541 US at 665, and *Mathiason*, 429 US at 495 (each noting that a suspect's ability to get up and leave weighs against a finding of custody). Though the officers knew that they would not have let defendant leave the house, they did not communicate this to defendant. This means that it has no bearing on the custody analysis. See *Berkemer v McCarty*, 468 US 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").

[10] See *JDB*, 564 US at 277 (noting the potential for a deferential standard when a defendant "was almost 18 years old at the time of his interview" or that "teenagers nearing the age of majority are likely to react to an interrogation as would a typical 18-year-old in similar circumstances") (quotation marks and citations omitted). See also *State v Jones*, 55 A3d 432 (2012) (holding that a 17-year-old was not in custody); Marcus, *The Miranda Custody Requirement and Juveniles*, 85 Tenn L Rev 251, 283 (2017) ("Precedent dictates that the cut off seems to be about thirteen-years-old. Below

analyzed the role that defendant's age played in the custody analysis; however, its failure to do so did not result in an erroneous judgment given the relatively minor impact that defendant's age had on the custody analysis in this case.[11]  Therefore, I do not believe the Court of Appeals committed a plausible error by determining that defendant was not in custody.  Because I do not believe there was a plausible error below, this would not be an appropriate case to GVR even if GVRs were ever warranted.

The only other rationale for vacating the decision below is if we found that the confession of error mooted the case and justified vacatur.  The prosecutor has presented a cursory argument to this effect, noting in her confession that she will not present the challenged evidence from defendant's interview at trial.  A " 'moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.' "  *League of Women Voters of Mich v Secretary of State*, ___ Mich ___ (2020) (Docket Nos. 160907 and 160908); slip op at 11, quoting *Anway v Grand Rapids R Co*, 211 Mich 592, 610 (1920).  If a case is moot, the normal practice is to vacate the lower court decisions, but the inquiry turns on the "conditions and circumstances of the particular case."  *Id*. at ___; slip op at 20 (quotation marks and citations omitted).

While we have not expressly addressed whether a confession of error can render a case moot, a few federal courts have rejected the argument that it can.  See, e.g., *United States v Brainer*, 691 F2d 691, 693 (CA 4, 1982) ("[W]e think it clear that the government's subsequent change of position neither mooted the case nor otherwise transformed it into something less than a case or controversy.").[12]  Moreover, in the seemingly analogous context in which the parties to a case on appeal settle,

---

that age, the courts are highly skeptical; much above that age and the courts are more inclined to defer to law enforcement.").

[11] See *People v Altantawi*, unpublished per curiam opinion of the Court of Appeals, issued September 5, 2019 (Docket No. 346775), p 10 n 3 (noting *JDB* but summarily concluding that "[i]n the instant case, taking into account all the evidence of record, including the age of defendant, we believe defendant was not in a custodial environment when he met with law enforcement officers in the dining room of his home").  Defendant's surname also appears in court documents as "Al-Tantawi."

[12] See also *United States v Wilson*, 169 F3d 418, 427 n 9 (CA 7, 1999) (agreeing with *Brainer* that a confession of error does not moot the issue).  In *Foster*, 377 Mich at 235, we did express the view that a confession rendered the case moot, but we did not cite any authority or provide any analysis of the issue.  See note 3 of this statement.

vacatur is not necessarily justified. See *US Bancorp Mtg Co v Bonner Mall Partnership*, 513 US 18, 29 (1994) (holding that "mootness by reason of settlement does not justify vacatur of a judgment under review" while noting that "the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course"). And although the prosecutor now states that she will not present the challenged evidence on remand, the parties have not made that commitment concrete by, for example, stipulating in the trial court to the evidence's inadmissibility. By vacating the Court of Appeals judgment without such an agreement, or something comparable, in place, the Court opens the door to allowing the prosecutor to change her mind on remand and seek introduction of the evidence. This possibility is why the United States Supreme Court has stated that a party's voluntary conduct moots a case only if "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc v Laidlaw Environmental Services (TOC), Inc*, 528 US 167, 189 (2000) (quotation marks and citation omitted).

Because the issues of mootness and vacatur in the context of this case involve questions of first impression, I would do as we have in the past and order supplemental briefing on these matters. See, e.g., *League of Women Voters of Mich*, ___ Mich at ___; slip op at 5 (noting the Court sought supplemental briefing on whether the case was moot and whether vacatur of the lower court judgment was appropriate).[13] Only with these questions resolved can we decide the case. If the prosecutor's current position somehow rendered the case moot and warranted vacatur, we could decide the case on those grounds. If the case is not moot, then I see no alternative but to reach the merits. Either way, we would have clear and transparent grounds for our decision. Unfortunately, the majority today chooses a different path, neither reaching the merits nor articulating a sound legal basis for reversing the Court of Appeals judgment. For these reasons, I dissent.

ZAHRA, J., joins the statement of VIVIANO, J.

---

[13] See also *Smith v Dep't of Human Servs*, 828 NW2d 18 (2013) (vacating a Court of Appeals judgment after the parties were directed to file supplemental briefs but instead filed a joint motion to vacate); *Progress Mich v Attorney General*, 504 Mich 966 (2019) (directing the parties to file supplemental briefing on the issue of vacatur); *Bonner Mall*, 513 US at 20 (noting that the Court directed additional briefing on vacatur when the parties settled).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 26, 2021



Clerk

t0223